[Civ. No. 38694. Second Dist., Div. Four. Mar. 21, 1972.]

JAMES L. SPITSER et al., Plaintiffs and Respondents, v. KENTWOOD HOME GUARDIANS, Defendant and Appellant.

**COUNSEL**

McCarroll & McCarroll and Neil G. McCarroll for Defendant and Appellant.

James L. Spitser, in pro. per., and for Plaintiffs and Respondents.

## OPINION

**DUNN, J.**—On 28 October 1970 plaintiffs, husband and wife, filed an action for declaratory and injunctive relief against defendant, a nonprofit corporation. Defendant filed its answer to the complaint and on 17 December 1970 filed a motion for summary judgment. On 7 January 1971 plaintiffs filed a counter-motion for summary judgment. Both motions were heard 9 February 1971. Defendant's motion was denied and plaintiffs' motion was granted; a formal judgment in favor of plaintiffs was filed 29 March 1971. Defendant has appealed from that judgment.

The parties are agreed on all facts. The declarations supporting the motions show that in September 1940 an oil company became the owner of real property in the Westchester area of the City of Los Angeles. It subdivided the property, thereafter known as "Kentwood," and developed various tracts in it for residential purposes. Each tract was made subject to a recorded Declaration of Protective Restrictions. In March 1943 the oil company formed defendant, Kentwood Home Guardians, as a non-profit corporation, its articles of incorporation reciting that its primary purpose was to enforce the declarations. On 4 March 1970 plaintiffs became owners of a residence in one tract. On 7 April 1970 defendant filed a complaint against the City of Los Angeles seeking an injunction to abate noise originating from the city's operation of the nearby Los Angeles International Airport. To finance this lawsuit defendant assessed Kentwood property owners, assessing plaintiffs a total of $8.40. The propriety of that assessment is here the point of contention.

Defendant/appellant takes the position that the Declaration of Protective Restrictions authorized its action and the assessment. Plaintiffs/respondents concede that defendant may make assessments, but not to finance such a lawsuit. Respondents do not dispute that the restrictions on the subdivided land contained in the recorded declarations are binding upon them. (*Girard* v. *Miller* (1963) 214 Cal.App.2d 266 [29 Cal.Rptr. 359]; *Robertson* v. *Nichols* (1949) 92 Cal.App.2d 201 [206 P.2d 898]; Civ. Code, § 1468.) It is the extent of those restrictions which they questioned.

The declarations state that the restrictions are imposed as part of a general plan of improvement, development, building, occupation and maintenance; the declarations endow Kentwood Home Guardians with "the power to enforce the conditions, restrictions, reservations and charges hereinafter set forth." Article III, paragraph 5, states: "No noxious or offensive trade or activity shall be carried on upon said property or any part thereof, nor shall anything be done or maintained thereon which

may be or become an annoyance or nuisance to the neighborhood." Article IX authorizes defendant to make an annual assessment, not to exceed 20 cents per front foot upon each lot, and to spend the money collected "for the purposes hereinafter specified or purposes incidental thereto," any unpaid and delinquent assessment becoming an enforceable lien on such lot.

Paragraph 8 of article IX requires defendant to apply sums collected "toward the payment of the cost of any or all of the following: . . . (E) Expenses, if any, incident to the enforcement of the restrictions, conditions, charges and agreements contained in this Declaration. . . ." Defendant/appellant contends the expense of litigation was properly incurred under the authorization of article III, paragraph 5. To the contrary, plaintiffs/respondents argue the language of the article demonstrates that legal action is authorized to abate only a nuisance generated upon Kentwood, itself, and that no authority is given defendant to levy an assessment whose purpose is to defray the expense of enjoining nuisances originating off the premises. Respondents emphasize the language of article III, paragraph 5, as follows: "No noxious or offensive trade or activity shall be carried on *upon said property, or any part thereof,* nor shall anything be done or maintained *thereon* which may be or become an annoyance or nuisance to the neighborhood." (Italics respondents'.)

In its briefs, appellant asserts that the "obvious purposes of the declaration were to protect . . . Kentwood for the welfare of all residents . . . and, to safeguard the community from nuisance, trespass, or other activity constituting a source of annoyance to the residents," also contending that: "Appellant . . . may abate a nuisance to residents of Kentwood *whether the source* of the nuisance or the perpetrator of same *is within or without* Kentwood." (Italics added.) The trial court held otherwise. Its judgment declared, in part: "The Declaration of Protective Restrictions permits legal action to be taken by defendant only against noise sources which are located within the boundaries of Kentwood."

We agree with the trial court. Article III of the declaration, entitled "Uses of Property," bans the use of Kentwood lots in a manner annoying to, or so as to be a nuisance to, the neighborhood. Article IX, entitled "Provisions for Upkeep," allows use of assessment funds to enforce these and other restrictions upon the use of the property. Appellant is not thereby authorized or required to protect Kentwood from annoyances or nuisances emanating from outside areas; appellant is not made an aegis to shield Kentwood from the outside world. It may assist a lot owner to protect the value of his investment if it is endangered by the conduct of other

lot occupiers or owners on their own lots. The declaration unambiguously reflects this intent.

Appellant concedes the pertinent language is unambiguous, yet argues that it has the right to produce extrinsic evidence, mentioned later herein, which would disclose the true intention of the parties, asserting the granting of summary judgment, therefore, was error. Appellant cites *Bramwell* v. *Kuhle* (1960) 183 Cal.App.2d 767, 777 [6 Cal.Rptr. 839] as its authority. We cannot agree it applies. First, in that aspect here involved the intent expressed in the Declaration of Protective Restrictions is clear. Second, if there is some hidden meaning, neither of the declarations filed regarding summary judgment states any fact or matter so indicating. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785].) If appellant/defendant had any such evidence, it easily could have so stated in the declaration filed in its behalf.

█ Where no relevant extrinsic evidence is introduced to aid in the construction of a contract, the construction presents a question of law. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *Petersen* v. *Ridenour,* 135 Cal.App.2d 720, 724-725 [287 P.2d 848].) █ The Declaration of Protective Restrictions clearly restricts the creation or the maintenance of a noxious or offensive trade or activity "upon said property" and we are bound to observe the "true signification of all English words and phrases." (Evid. Code, § 451, subd. (e).) No declaration stated any fact which might show an intent to restrict trades or nuisances arising elsewhere than "upon said property."

Appellant points to its own articles of incorporation which lists one of its corporate purposes as: "To exercise generally all powers of . . . interpretation . . . and construction of all conditions, restrictions and charges now in effect . . . affecting the real property herein described . . . ." The declaration filed on behalf of appellant/defendant asserts that "In so construing its powers, the defendant has, as a matter of policy, always resisted activities in the immediate neighborhood which, in the opinion of the Directors, constituted a nuisance . . . in the Kentwood area." Appellant thus contends its conduct is pertinent to interpreting the Declaration of Protective Restrictions.

At the outset, we may question whether proof by a party of its own conduct is relevant to interpreting an agreement. Be that as it may, it has been held that the conduct of a contracting party may be used as

an aid to interpreting an agreement in order to get at "the mutual intention of the parties." (*Grove* v. *Grove Valve & Regulator Co.* (1970) 4 Cal. App.3d 299, 308-310 [84 Cal.Rptr. 300]; *Adams* v. *Williams Resorts, Inc.* (1962) 210 Cal.App.2d 456, 460 [26 Cal.Rptr. 656].) The same rules apply to interpreting grant deeds. (Civ. Code, §§ 1066, 1636.)

■ However, when the language is clear and explicit, does not involve an absurdity (Civ. Code, § 1638) and no ambiguity is shown, evidence of conduct is irrelevant. In other words, evidence to clarify an ambiguity is not needed when no ambiguity is shown to exist. *Petersen* v. *Ridenour, supra,* 135 Cal.App.2d 720, states the rule thus (p. 725): ". . . practical construction has no place in the consideration of an unambiguous agreement." (Also see: *Adams* v. *Williams Resorts, Inc., supra,* at p. 460.) For the foregoing reasons, appellant's argument fails.

■ Appellant next argues that airplanes flying overhead create noise within the boundaries of Kentwood, itself, which noise therefore constitutes an abatable nuisance. (2 C.J.S. 909, Aerial Navigation, § 29.) This argument may be valid but it does not answer the question: is this an activity "upon said property" by a person against whom appellant is authorized to proceed under the Declaration of Protective Restrictions? The fact Kentwood lot owners, individually or collectively, may have their rights invaded, with a corresponding right of access to the courts, does not endow appellant with the right to sue airport authorities or airlines on their behalf, and to charge lot owners for the costs of suit. The language of the declaration specifies that "No noxious or offensive trade or activity shall be carried on upon the property. . . ." From this and the other language we believe it clear that appellant may not assess lot owners with the costs of suit brought against third parties merely because noises arise from overhead. It would be incongruous to believe the parties intended that airplane noises originating next door could not be abated by appellant on their behalf but that it could file a suit against third parties, seeking to abate noises of airplanes because they were overhead and not next door.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1972.