[No. A040752. First Dist., Div. Four. Apr. 30, 1990.]

OVE FLOYSTRUP et al., Plaintiffs and Appellants, v.
CITY OF BERKELEY RENT STABILIZATION BOARD,
Defendant and Respondent;
ANNIE ROLFE et al., Real Parties in Interest.

1310

**COUNSEL**

W. Stephen Wilson, Timothy F. O'Leary, Gregory S. Nerland and Wilson, Sher, Marshall & Peterson for Plaintiffs and Appellants.

Manuela Albuquerque, City Attorney, Timothy J. Lee and Brian Kelly, Deputy City Attorneys, for Defendant and Respondent.

Mark Goldowitz for Real Parties in Interest.

## OPINION

**ANDERSON, P. J.**—This appeal presents yet another attack on the constitutionality of the Berkeley Rent Stabilization and Eviction for Good Cause Ordinance (Ordinance). Appellants (landlords), owners of apartment units in Berkeley, claim that the provisions of the Ordinance allowing tenants to withhold rent because of landlords' failure to register[1] are unconstitutional on their face and as applied. *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348 [261 Cal.Rptr. 318, 777 P.2d 91], a recently decided Supreme Court case, supports landlords' position and mandates reversal.

### I. BACKGROUND FACTS

The Ordinance, passed by the Berkeley voters on June 3, 1980, set up a strict scheme regulating increase of rents and eviction of tenants. The Ordinance designated the rent paid on May 31, 1980, as the base rent ceiling upon which future rent adjustments must be calculated. (§§ 13.76.100, 13.76.110, 13.76.120.) The Ordinance required that the landlord register covered rental units by filing an initial registration statement by September 1, 1980, and by paying an annual registration fee. The registration statement must be subscribed under penalty of perjury and includes numerous questions, such as the rent charged on June 6, 1978, and December 30, 1979; the lowest rent in effect between June 6, 1978 and June 3, 1980; and the rent charged on May 31, 1980. (§ 13.76.080.) Landlords claimed that answering these questions might cause them to incriminate themselves (presumably since their rent rates violated the 1978 rent control ordinance and subjected them to criminal penalties under the 1980 ordinance.).

Landlords refused to comply with the registration requirement of the Ordinance. While they placed the registration fees into an escrow account and submitted a registration statement containing only their names and addresses, they refused to provide any other information, claiming that such compelled disclosure would violate their Fifth Amendment right against self-incrimination. Following a warning on May 6, 1981, respondent City of

---

[1] Berkeley Municipal Code section 13.76.150(A)(1), (2). Unless otherwise indicated, all section references are to the Ordinance.

Berkeley Rent Stabilization Board (Board) filed a lawsuit against landlords for failure to register their property in compliance with the Ordinance (City of Berkeley Rent Stabilization Board v. Floystrup, Alameda Co. Super. Ct. No. 545412-5). In that action the Board sought a preliminary injunction to compel landlords to pay the registration fees and to file a registration statement in accordance with the Ordinance. After a hearing on June 10, 1981, the court found landlords' constitutional claim of self-incrimination to be of substance (see fn. 7, *post*) and ordered them to pay only the registration fees; it declined to compel them to submit a registration statement. In March 1982 the parties entered into a stipulation whereby landlords agreed to pay the registration fees without penalty and the Board agreed not to seek a preliminary injunction or any other preliminary relief prior to trial of the action for a permanent injunction.

However, instead of seeking a permanent injunction and a court determination of landlord's pending constitutional claim, the Board dismissed the suit on March 1, 1983, and unilaterally determined[2] that the registration requirements of the Ordinance were lawful and not violative of landlord's constitutional rights. Subsequently in a series of letters, the Board notified landlords that their property was not lawfully registered and warned them that their failure to submit the requisite registration information violated the Ordinance and entitled their tenants to invoke the administrative remedies contained in the Ordinance—including rent withholding. Simultaneously, the Board notified the tenants that landlords' property was not registered in accordance with the rent control law.

On December 21, 1986 (six years after landlords refused to register, five and one-half years after the court order, four and one-half years after the stipulation, and three and one-half years after the dismissal of the court action), tenants Annie Rolfe and Dennis Fantin filed a petition with the Board seeking an authorization to withhold the rent because of landlords' failure to complete the registration information. (§ 13.76.150(A)(1).) Following a hearing the examiner granted the petition. The "Escrow Order for Rent Withholding" authorized the tenants to deposit the rent into escrow beginning February 1, 1987. On March 31, 1987, the Board rejected landlords' appeal and affirmed the hearing examiner's decision on grounds that the property was not properly registered. After the denial of the appeal, other tenants filed consolidated petitions to withhold their rents. On May 1, 1987, the Board issued a second order allowing the remaining tenants to deposit their rents in escrow.

---

[2] Letter from the Board to Eva Floystrup, dated February 18, 1983, advised as follows: "The City Attorney's office has advised this Program that your constitutional objections are without merit . . . ."

On June 23, 1987, landlords filed a petition for a writ of mandate in the superior court seeking reversal of the rent withholding orders and a declaration that the registration requirements of the Ordinance and the remedies provided therefor were unconstitutional either on their face or as applied. In urging relief landlords attacked the Board's decisions on numerous grounds, including the claim that the issuance of the rent withholding orders violated the judicial powers clause of the California Constitution (art. VI, § 1) and that the Board's orders breached the parties' stipulation. Following a hearing the trial court denied landlords' petition and entered judgment in favor of the Board.

## II. DISCUSSION

Although landlords challenge the court's ruling on numerous grounds,[3] we agree with them that the judgment sustaining the rent withholding orders violates the judicial powers provision of the Constitution. In addition, we are persuaded that the Board was estopped from issuing the rent withholding orders because it breached the parties' stipulation. Each of these reasons compels us to reverse the trial court's judgment.

### A. The Rent Withholding Provisions of the Ordinance Are Unconstitutional

■ Article VI, section 1 of the California Constitution provides that "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior court, municipal courts, and justice courts. All except justice courts are courts of record." Case law has long taught that agencies not vested by the Constitution with judicial powers may not exercise such powers. "[A]rticle VI disposes of *all* judicial power not expressly disposed of elsewhere in the Constitution . . . . [A]lthough the Legislature retains the authority to grant a multitude of powers to local bodies pursuant to article XI, powers of a *judicial* nature are no longer at its disposal." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 42 [112 Cal.Rptr. 805, 520 P.2d 29], original italics.)

■ The issue of whether the rent withholding provisions of the Ordinance fall within the protective umbrella of the judicial powers clause of the

---

[3] Aside from the grounds discussed *post,* landlords claim that the judgment below is erroneous because the initiation of the administrative actions was barred by: (1) the statute of limitations; (2) laches; (3) compliance with the Ordinance; (4) is constitutionally infirm because the composition of the board denying landlord representation violates the equal protection and due process provisions of the Constitution; (5) the rent withholding orders constitute a "taking" of property without due compensation; and (6) the registration requirement of the Ordinance runs counter to the constitutional privilege against self-incrimination.

Constitution, has just been determined by *McHugh* v. *Santa Monica Rent Control Bd., supra,* 49 Cal.3d 348.

In *McHugh,* two tenants, Smith and Plevka, filed an administrative complaint against plaintiff landlord for recovery of excess rents. In an appeal from the initial decisions of the hearing examiner. The board ruled that the tenants were entitled to recover the excess rents together with treble damages and interest under the charter amendment to the Santa Monica rent control ordinance. Tenant Smith, who had vacated the premises, was awarded restitution in the sum of $1,593.03. Tenant Plevka, who remained in possession of the rental unit, was authorized to withhold the award from his future rent payments in accordance with the rules established by the board. The landlord filed a petition for writ of mandate to set aside the decision of the board, claiming a violation of the judicial powers clause of the Constitution.

After reviewing a number of cases delegating judicial power to administrative agencies, the Supreme Court concluded that while the administrative adjudication and award of restitution does not offend the judicial powers clause of our Constitution when the requisite substantive and procedural limitations are respected, the board order which authorizes immediate rent withholding without judicial review or approval represents an unwarranted intrusion into the power of the courts to "check" administrative adjudications. (*McHugh* v. *Santa Monica Rent Control Bd., supra*, 49 Cal.3d at pp. 353, 373, 377.) In its reasoning the court emphasized that the rent withholding order issued to Plevka fell within the above prohibition, because it took effect immediately without further judicial review and served as a defense to an unlawful detainer action based upon nonpayment of rent: "Under present procedures, the Board possesses the ability to make an *order* that, although not 'final' or 'self-enforcing' in the typical sense of those terms, *is in fact immediately enforceable* in a real sense at the discretion of a private party. By its own regulations, the Board's decision becomes final 'at the time of Board action[,]' i.e., immediately after the Board renders its decision. Thereafter a tenant may withhold rent up to the amount specified by the Board. In this fashion *the Board's order is given immediate practical effect: before the landlord has even the opportunity to obtain judicial review by petition for writ of mandate* (Code Civ. Proc., § 1094.5, subd. (a)) *and a stay of the Board's order* (*id.*, subd. (g)), *the tenant is allowed to withhold rent money otherwise due.* In addition, the Board's order is also thereby given legal effect: the order, pursuant to the Charter Amendment, is an affirmative defense to an unlawful detainer action based on the tenant's nonpayment of rent. [Citation.]" (*Id.*, at p. 376, italics added, fn. omitted.)

The Ordinance upon which the Berkeley Board orders rest is very similar to the Santa Monica board regulations analyzed in *McHugh.* The Ordinance authorizes either the Board or the tenant to withhold rent without court review or approval if the landlord fails to register the apartment unit or if he or she demands or receives excessive rent. Similar to the Santa Monica rent regulations, the Ordinance also bars an unlawful detainer action based upon rent withholding by the tenant. Moreover, the Ordinance goes even further than Santa Monica's inasmuch as it forbids a rent increase while the withholding order is in effect or the landlord is otherwise in violation of the Ordinance; in addition, it authorizes not only temporary withholding of rent, but also a forfeiture of the withheld rents in the discretion of the Board; and each such action may be taken without any judicial "check."[4] Indeed, the Board's orders authorizing rent withholdings by the tenants took effect automatically without judicial review (for tenants Fantin and Rolfe on Feb. 1, 1987, and for the rest of the tenants on May 1, 1987); following those dates tenants were allowed to place their rents into an escrow account; and the May 1, 1987, withholding order explicitly advised landlords that if they did not register within 60 days, 50 percent of the rent would be distributed to the tenants, i.e., forfeited by them. The conclusion is thus inescapable that the rent withholding orders of the Board do not pass constitutional muster.

The Board's argument that the violation of judicial powers issue is not properly before this court because landlords failed to raise that issue in the administrative proceedings is without merit. ■ A party has standing to challenge an ordinance or a statute invalid on its face without first exhausting its administrative remedies. (*Ebel* v. *City of Garden Grove* (1981) 120

---

[4] Section 13.76.150, the remedies chapter of the Ordinance, provides in pertinent part: "A. For violation of Rent Ceilings or Failure to Register. If a landlord fails to register in accordance with Section 13.76.080 of this chapter, or if a landlord demands, accepts, receives or retains any payment in excess of the maximum allowable rent permitted by this chapter, a tenant may take any or all of the following actions un[til] compliance is achieved: [¶] 1. A tenant may petition the board for appropriate relief. If the board, after the landlord has proper notice and after a hearing, determines that a landlord has willfully and knowingly failed to register a rental unit covered by this chapter or violated the provisions of Sections 13.76.100, 13.76.110 and 13.76.120 of this chapter, *the board may authorize the tenant of such rental unit to withhold all or a portion of the rent* for the unit until such time as the rental unit is brought into compliance with this chapter. *After a rental unit is brought into compliance, the board shall determine what portion, if any, of the withheld rent is owed to the landlord* for the period in which the rental unit was not in compliance. Whether or not the board allows such withholding, *no landlord who has failed to comply with the chapter shall at any time increase rents for a rental unit until such unit is brought into compliance.* [¶] 2. A tenant may withhold up to the full amount of his or her periodic rent which is charged or demanded by the landlord under the provisions of this chapter. *In any action to recover possession based on nonpayment of rent, possession shall not be granted where the tenant has withheld rent* in good faith *under this section.*" (Italics added.)

Cal.App.3d 399, 409 [176 Cal.Rptr. 312].) ■ It is likewise settled that a litigant, who seeks to challenge the constitutionality of the statute under which the agency operates, need not raise that issue in the proceedings before the agency as a condition of raising the issue in the courts. Quite the contrary, in this type of situation the party, after pursuing the available administrative procedure, may present the constitutional claim for the first time in the courts. (*State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Nissan Motor Corp.* v. *New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109, 115 [202 Cal.Rptr. 1]; *Laird* v. *Workers' Comp. Appeals Bd.* (1983) 147 Cal.App.3d 198, 204 [195 Cal.Rptr. 44].)

### B. *The Issuance of the Rent Withholding Orders Was Barred by the Stipulation*

■ Although our holding that the judicial powers clause has been violated is dispositive of this case, we note that the rent withholding orders also breached the parties' stipulation.[5] Pursuant thereto the Board was obligated to seek a permanent injunction and to obtain therein a judicial resolution of the self-incrimination issue before it imposed the sanction of rent withholding.

The stipulation, which was entered into following the Board's unsuccessful attempt to compel landlords to file a registration statement, reads as follows: "IT IS HEREBY STIPULATED by and between the parties that defendants will pay the required registration fees due as of the date of this Stipulation under the provisions of Measure D, but no penalties, within twenty (20) days of the filing of this Stipulation. Said payments will be made without prejudice to defendants right to contest the validity of said fees and to seek return of said fees at the time of trial in this action. [¶] *The parties further stipulate that* in consideration of said payment, *plaintiff will not seek a preliminary injunction or other preliminary relief prior to trial of the action for permanent injunctive relief.* The parties agree that a time estimate of one day shall be utilized in any Memorandum to Set filed by either party to this action." (Italics added.)

■ In construing stipulations we apply the rules for construction of contracts. (*J.C. Penney Co.* v. *Superior Court* (1959) 52 Cal.2d 666, 669 [343 P.2d 919]; *Imperial Ins. Co.* v. *California Casualty Indem. Exchange* (1984) 158 Cal.App.3d 540, 546 [204 Cal.Rptr. 819].) Under settled law "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascer-

---

[5] Contrary to the position of the dissent, this issue must be addressed in order to decide the question of attorney fees which are requested by appellants.

tainable and lawful." (Civ. Code, § 1636; *Ticor Title Ins. Co.* v. *Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730 [223 Cal.Rptr. 175].) The intention of the parties must be first determined from the language of the contract itself. (Civ. Code, § 1638; *Spitser* v. *Kentwood Home Guardians* (1972) 24 Cal.App.3d 215, 220 [100 Cal.Rptr. 798].) However, where the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract. (Civ. Code, § 1647; *Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 13 [115 Cal.Rptr. 736].) In resolving ambiguity, the court may consider not only the express, but the implied terms of the contract as well. ▮ In California there is an implied covenant of good faith and fair dealing in every contract, which imposes a duty upon the party to the contract to perform faithfully and not to deprive the other party of the benefits of the contract. (*McWilliams* v. *Holton* (1967) 248 Cal.App.2d 447, 451 [56 Cal.Rptr. 574].) As succinctly stated in *Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367]: "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. [Citations.] This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." (Accord *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 816 [195 Cal.Rptr. 421]; *Vale* v. *Union Bank* (1979) 88 Cal.App.3d 330, 336 [151 Cal.Rptr. 784]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 743, p. 674.)

▮ The stipulation unequivocally provides that in consideration of the payment of landlords' registration fee the Board promised to forego seeking another preliminary injunction or any other preliminary relief before trying the action for a permanent injunction. Trial of the permanent injunction action was deemed necessary by the parties mainly because the issue of self-incrimination raised by landlords had been left undecided in the preliminary injunction proceeding. Thus, the administrative record demonstrates that, at the hearing on the petition for preliminary injunction, landlords did raise the issue that the completion of the registration statement would violate their constitutional rights against self-incrimination. Counsel for the Board acknowledged that the defense relied on by landlords involved an important issue requiring a judicial determination.[6] The trial judge likewise

---

[6] "Ms. JUERGENS [counsel for the board]: 'These defendants [landlords] have raised constitutional issues we have offered to drop in the past. We have interrupted everybody's status, come in today and *these constitutional issues* are not going to be resolved. If they are sincere in their desire to raise these constitutional issues, they *have to be resolved* whether it's now or

recognized that there was substance to the self-incrimination point raised by the defense. As a matter of fact, the trial court's denial of the preliminary injunction to compel registration rested on the self-incrimination aspect of the registration.[7]

Despite the explicit promise in the stipulation and the reasonable expectations of landlords, the Board unilaterally dismissed the suit for permanent injunction and never initiated another one; it thus foreclosed a judicial determination of the still undecided self-incrimination issue. Instead, the Board took upon itself the adjudication of the pending constitutional issue and imposed the rent withholding sanctions upon landlords. By doing so the Board breached not only the express term of the agreement, but also the implied covenant of good faith and fair dealing; landlords were thus deprived of the benefit of the contract. (Rest.2d Contracts, § 205, com. d.)[8] It is, of course, well established that where, as here, the party to a stipulation lulls his opponent into a false sense of security and thereafter breaches the agreement, the party aggrieved may invoke the remedy of estoppel precluding the party from proceeding or acting in breach of its promise. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *Woley* v. *Turkus* (1958) 51 Cal.2d 402, 407 [334 P.2d 12]; *Farrar, Herrick & Associates* v. *Safecare Co.* (1981) 115 Cal.App.3d 123, 131 [171 Cal.Rptr. 191].)

In light of our conclusion the additional issues raised by landlords (see fn. 3, *ante*) need not be decided.

---

after August 20th when we can further pursue enforcement. . . . [¶] But *I think getting a clear understanding from you [the court] on the constitutional issues is important both for the Council and the landlord public being urged to comply with the law.* [¶] Many of these people have stated, who have called—and I have spoken personally with several litigants before they were represented by Mr. Wilson [counsel for landlords], said, 'Isn't this unconstitutional? I would register, but I don't want to "give you my June '78 rent levels. . . ." ' " (Italics added.)

[7] Excerpts from the court's ruling: "THE COURT: . . . I am not going to order registration and this is without prejudice to the whole—both issues being raised in the future and the *whole question of constitutionality, of course, is still alive* as far as I'm concerned on the bases [*sic*] set forth in Monger *and I believe that there is enough substance to the self-incrimination of this point raised by Mr. Wilson* that is something that heretofore has not been raised. . . . [¶] In any event *enough substance has been raised as to the self-incrimination aspect of the registration, so that that's further grounds for my not granting the injunction respecting registration.* So, my order will be the injunction is granted as to payment of the registration fees without the penalties or interest. . . ." (Italics added.)

[8] Restatement Second of Contracts section 205, comment d states in part: "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: *evasion of the spirit of the bargain . . . .*" (Italics added.)

## III. DISPOSITION

The judgment is reversed. The Board is to pay costs and attorney fees. The matter is remanded to the trial court: (1) to issue a writ of mandate directing the Board to vacate its decisions in case numbers RWN 554, 578, 579, 581 and 582[9] and ordering the Board (and/or the tenants) to repay the rents withheld and the registration fees paid by landlords pursuant to the stipulation; and (2) to determine the costs and reasonable attorney fees payable to landlords (Gov. Code, § 800; *Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 224 [134 Cal.Rptr. 332]; *Campbell* v. *Residential Rent Stabilization & Arbitration Bd.* (1983) 142 Cal.App.3d 123, 128-130 [190 Cal.Rptr. 829]).

Channell, J., concurred.

**POCHÉ, J.**—I dissent.

### *Facts*

As I read the record the facts in this case are these. On September 1, 1980, the Berkeley rent ordinance took effect. Prior to that date the Floystrups deposited registration fees for their rental units as imposed under the ordinance into an escrow and submitted registration forms minus the required rental rate histories. In May of 1981 the City of Berkely Rent Stabilization Board (Board) brought an action for civil penalties and injunctive relief to compel the Floystrups to comply with the registration requirements of the ordinance. After a hearing on the preliminary injunction the trial court on June 17, 1981, ordered the Floystrups to pay the required registration fees, exclusive of penalties and interest, but expressly *reserved ruling* on the issue of whether or not the Floystrups' Fifth Amendment right to avoid self-incrimination shielded them from providing the rental rate histories required by the ordinance.

In March 1982 the parties entered into the following stipulation: "that defendants [Floystrups] will pay the required registration fees due as of the date of this Stipulation under the provisions of [the ordinance], but no penalties, within twenty (20) days of the filing of this Stipulation. Said payments will be made without prejudice to defendants' right to contest the validity of said fees and to seek return of said fees at the time of trial in this action. [¶] The parties further stipulate that in consideration of said payment, plaintiff will not seek a preliminary injunction or other preliminary

---

[9] Case numbers RWN 554, 578, 579, 581 and 582 *were* part of the record, *were* before the court and *were* specifically disposed of by the court's June 23, 1985, "order Directing Issuance of Alternative Writ of Mandamus," contrary to the assertion of our dissenting colleague. The ultimate decision denying the writ necessarily adjudicates these cases.

relief prior to trial of the action for permanent injunctive relief. The parties agree that a time estimate of one day shall be utilized in any Memorandum to Set filed by either party to this action."

One year later, March 1, 1983, the Board dismissed its action without prejudice. Some two weeks earlier, on February 18, 1983, the Board had notified the Floystrups that their registration forms were incomplete and advised them that it had found their constitutional objections to registration meritless. Similar correspondence followed the stipulation when on March 9, 1983, the Board again notified the Floystrups that their rental properties were still not registered in compliance with the ordinance. In response to these demands for complete registration information the Floystrups took the position that having paid the currently due registration fees they were "in full compliance with the requirements of the court order" of June 17, 1981.

Two of the Floystrups' tenants, Dennis Fantin and Annie Rolfe, filed a petition with the Board in December 1986 to withhold their rent because their rental unit was not properly registered.[1] On January 7, 1987, the rent withholding petition was heard by a Board examiner who issued his decision the following day. That decision permitted Fantin and Rolfe to pay their rent into an escrow account held by the Board beginning with the rent payment due February 1, 1987.

The Floystrups appealed the hearing examiner's decision. On appeal the Board's appeals panel considered two issues: first, whether the stipulation entered into in the superior court action excused the Floystrups from complying with the initial registration requirements of the ordinance, and second, whether such registration impinged upon their constitutional right against self-incrimination. In its decision the appeals panel concluded that the stipulation did not bar the Board from requiring registration and rejected the constitutional claim. By its decision of March 31, 1987, the appeals panel held that "[i]f the landlord files a properly completed initial registration statement within twenty days of the date of this decision, the rent withholding order will be dissolved and the rent in escrow returned to the landlords." By an order of May 22, 1987, the Floystrups' request for reconsideration of this decision was denied.

On June 23, 1987, the Floystrups filed a petition for a writ of administrative mandamus. The Board demurred to the petition insofar as it sought relief from rent withholding orders[2] issued on behalf of other Floystrup

---

[1] Fantin and Rolfe are a married couple who occupied 1526 Milvia. Their petition was designated case number RWN-554 before the Board.

[2] Apparently other Floystrup tenants filed similar rent withholding petitions because on May 1, 1987, a hearing officer issued an order permitting payment into escrow of rent by the

tenants, besides Fantin and Rolfe. On October 8, 1987, after a hearing on both the writ petition and the demurrer the superior court denied the petition. On October 22 the Floystrups filed completed registration statements with the Board, and it in turn dissolved all the rent withholding orders applicable to the Floystrups' rental units.

## Discussion

The majority opinion chooses to decide this case on constitutional grounds, though it also reverses on the alternative, nonconstitutional claim of estoppel. This procedure violates the worthy principle of appellate economy which teaches us to refrain from reaching constitutional issues unless it is absolutely necessary to do so in order to decide the case before us. (*Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 586 [262 Cal.Rptr. 46, 778 P.2d 174]; *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65-66 [195 P.2d 1].) Enticed by the lure of a constitutional claim the majority opinion in pure dicta then concludes that reversal is also required because it interprets the Board's stipulation with the Floystrups in the civil suit as estopping the Board from ever enforcing the provisions of the ordinance against the landlords.

The majority opinion insists that it must reach the question of whether the stipulation estopped the Board from issuing rent withholding orders because the Floystrups have requested attorney fees. (Maj. opn., *ante,* at p. 1317, fn. 5.) Indeed, the Floystrups did request an award of attorney fees under Government Code section 800, but they did so for the first time on appeal in their reply brief. Thus, far from being *obliged* to reach the estoppel issue the opinion does so only by first ignoring a rule this division otherwise observes—(*San Franciscans For Reasonable Growth* v. *City and County of San Francisco* (1989) 209 Cal.App.3d 1502, 1515, fn. 10 [258 Cal.Rptr. 267])—namely, that issues raised for the first time in a reply brief will not be considered absent a showing of good cause for their omission from the opening brief. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250].)

## Judicial Powers

Since the majority opinion finds the recent decision in *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348 [261 Cal.Rptr. 318, 777 P.2d 91], dispositive, *McHugh* deserves close examination. In *McHugh* the administrative decision permitting immediate withholding of rent by a tenant issued "in late March 1983. Thereafter [tenant] Plevka withheld his rents

---

other tenants. At the hearing on the demurrer and on the petition for the writ of mandamus the leases of those other tenants, which were not part of the administrative record before the superior court, were marked for identification, but were not introduced into evidence.

for April, May, and June. In late June plaintiff sought review by a writ of mandate (Code Civ. Proc., § 1094.5, subd. (a)), and a stay (*id.*, subd. (g)) from the superior court." (*Id.* at p. 376, fn. 42.) The Board's order also determined that Smith, a former tenant, was owed excess rent plus interest by landlord McHugh. (*Id.* at p. 354.)

In *McHugh* the rent Board's decision took effect immediately: once the Board heard an administrative claim regarding excess rent and issued its determination the tenant could immediately deduct the penalty from his future rent payments. Judicial review of the Board's decision under the Santa Monica ordinance was by recourse to a petition for a writ of administrative mandamus. (*McHugh* v. *Santa Monica Rent Control Bd., supra,* 49 Cal.3d at p. 354.) Thus, in the Santa Monica scheme examined in *McHugh* the restitutive order was the order of the Board which permitted immediate withholding and retention of rent by the tenant or created an immediately enforceable debt in the former tenant. (*Id.* at p. 377, fn. 43.)

That immediacy of effect caused the Supreme Court to find the ordinance to be constitutionally defective. The fault, the court explained, was that the ordinance "permits orders awarding restitution to become effective before there is an opportunity for the court to pass on whether to stay the challenged order pending review of the administrative decision by writ of mandate." (*McHugh* v. *Santa Monica Rent Control Bd., supra,* 49 Cal.3d at p. 386.)

To put it mildly the Santa Monica ordinance sets up a very different scheme than that involved under the Berkeley ordinance and employed by Fantin and Rolfe. When a landlord fails to comply with the registration requirements of the Berkeley ordinance an aggrieved party has several available remedies—some administrative, some judicial. Fantin and Rolfe exercised one of the administrative remedies—they petitioned the Board for a rent withholding order. (Berkeley Mun. Code, § 13.76.150 (A)(1); for partial text of that section see maj. opn., *ante,* at p. 1316, fn. 4.)[3]

Having found that the Floystrups' failure to register the Fantin/Rolfe apartment was knowing and willful, the hearing examiner issued the requested order directing Fantin and Rolfe to pay rent into an escrow held by the Board in the amount of $390 per month, payable on the first day of each month. The order provides that if Fantin and Rolfe fail "to comply with the

---

[3] Section 13.76.150 (A), also includes two other judicial remedies for tenants besides those set forth in footnote 4 of the majority opinion. "3. A tenant may seek injunctive relief on behalf of herself or himself to restrain the landlord from demanding or receiving any rent on the unit until the landlord has complied with the terms of this chapter. [¶] 4. A tenant may file a damage suit against the landlord for actual damages when the landlord receives or retains any rent in excess of the maximum rent allowed . . . ." Unless otherwise indicated, all section references are to the ordinance.

order" it will dissolve and their petition will be dismissed. It also directs that "[m]onies deposited in escrow can be released only upon the order of the Hearing Examiner. The escrow account will be dissolved after the landlord's proper registration of the unit, including payment of fees and penalties OR at sixty days from the effective date of the Rent Withholding Order, whichever is sooner. The *monies will be distributed at that time in accordance with the Rent Board Regulations, unless a subsequent order is made granting a request to continue the escrow account while an appeal is pending.*" (Italics added.)

The clear impact of the Berkeley ordinance and the withholding order issued here is that no restitutive disbursement of funds will occur until either the landlord complies with the registration requirements, or 60 days elapses, and the Board determines under § 13.76.150 "what portion . . . of the withheld rent is owed to the landlord for the period in which the rental unit was not in compliance." By its own terms the rent withholding order permits extension of the escrow—effecting a delay of any disbursement to the tenant or landlord—if a request for such continuance is granted pending appeal.

While the Berkeley ordinance does not spell out that such an appeal can be by way of a petition for a writ of mandamus (§ 13.76.180; contrast the Santa Monica ordinance in *McHugh* v. *Santa Monica Rent Control Bd., supra,* 49 Cal.3d at 354), the order itself provides for a way of staying the Board's disbursement of funds (through continuance of the escrow). Thus, it avoids the constitutional vice of the Santa Monica order which had the immediate effect of permitting the tenants to receive restitution by offsetting against their future rent payments sums equivalent to the past rent over-charges. (*Id.* at p. 376.)

In short, with its issuance by the Board the rent withholding order in *McHugh* effected immediate restitution as between the landlord and tenant. In contrast, the rent withholding order here is merely a preliminary step in an administrative process which may eventually result in a restitutive pay-ment to the tenant, but not without an opportunity for the landlord to challenge that result by continuing the escrow pending resolution of a landlord appeal to a court. Thus the principle of judicial "check" crucial to the *McHugh* court was preserved by the order issued for Fantin and Rolfe.

At worst the rent withholding order which issued here can be faulted for not expressly alerting the landlord to the option of petitioning for a writ of administrative mandamus or for not automatically continuing the escrow for a finite period in which such a petition could be made. Absent the critical fact that no immediate restitutionary benefit to the tenants flowed

from the order issued here, however, I cannot say that this case is, as the majority suggests, nothing more than McHugh II, but with a worse script.

Disposition

Even if I could agree that the Berkeley scheme suffers from constitutional infirmity by offending the principle of judicial check, I could not join in the disposition the majority opinion makes. The court in *McHugh* ordered entirely *prospective* relief with respect to the future rent withholding orders issued by the Santa Monica Board. *McHugh* directed the issuance of a writ of mandamus "commanding the Board . . . to stay enforcement of any *future* order in accordance with this decision (see *ante*, fn. 44)." (*McHugh* v. *Santa Monica Rent Control Bd., supra*, 49 Cal.3d at p. 386, italics added.) At footnote 44 the decision tells the Board how to avoid constitutional infirmity in the future: "by (as a matter of regular procedure) staying enforcement of its orders for a period of time sufficient to allow an aggrieved party to seek from the courts a stay of the Board's order under Code of Civil Procedure section 1094.5, subdivision (g). (Cf. Gov. Code, § 11519, subd. (a) ['The decision shall become effective 30 days after it is delivered or mailed to respondent unless . . . a stay of execution is granted'].)" (*Id.* at p. 377, fn. 44.) Thus, if, as the majority holds, *McHugh* controls its limited remedy would also apply: the majority should direct the Board to provide in all future rent withholding orders for a stay to permit judicial review.

The majority opinion also purports to consider orders in cases for which we have no record. The only case which is properly before us is the rent withholding petition of Fantin and Rolfe (No. RWN 554). The other decisions (in rent withholding orders on petitions No. RWN 578, 579, 581 and 582) which the majority directs be vacated are apparently orders permitting withholding by other Floystrup tenants.[4] We know virtually nothing else about these cases since they are not part of the record which was before the trial court or is before us. The only reference to the terms of the orders in the record is contained in a two-sentence paraphrase which is contained in the Floystrups' petition for writ of mandamus.[5] Accordingly, I conclude the majority opinion errs in ordering issuance of a writ of mandate directing decisions in all of these cases be vacated and the rent in escrow be returned to the landlords.[6]

---

[4] See footnote 2, pages 1321-1322, *ante*. Indeed, this court expressly denied the Floystrups' motion to augment the record before us with the hearings on the other rent withholding petitions. (Order of July 13, 1988.)

[5] Indeed, the Board demurred to the petition for a writ of mandate as to these petitions expressly on the ground that those cases had not, as of July 28, 1987, been appealed to the Board, and were thus still pending at the administrative level.

[6] It is especially outrageous for the majority opinion to direct tenants other than Fantin and Rolfe "to repay the rents withheld." (Maj. opn., *ante*, at p. 1320.) Because of the lacunae in

## Stipulation

I also find fault with the disposition insofar as it orders the Board to refund the registration fees paid by the Floystrups under the terms of the stipulation.

Under the express provisions of the Berkeley ordinance such fees are debts owed to the city. (§ 13.76.080 (G).) Thus, the majority seems to order their return in an exercise of its equitable power to remedy what it sees as the injury caused by what it finds to be the Board's bad faith with respect to the stipulation. Return of the registration fees was not sought by the Floystrups in the writ petition below. In any event, the Floystrups' duty to pay registration fees predated the stipulation; such payment was required under the court order of June 17, 1981.

By the terms of the stipulation which the parties entered into in the civil action brought by the Board against the Floystrups, the city agreed to accept the registration fees required under the ordinance,[7] waive penalties, and in consideration of payment "plaintiff will not seek a preliminary injunction or other preliminary relief prior to trial of the action for permanent injunctive relief."

Payment of registration fees under the Berkeley ordinance is, as our Supreme Court has noted, "crucial" because funding for the Board's expenses derives from the annual registration fee. (§ 13.76.060 (N).) (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 700-701 [209 Cal.Rptr. 682, 693 P.2d 261].) The penalty provisions of an additional levy every 60 days of 100 percent of unpaid registration is designed to provide the Board with substantial leverage in enforcing registration compliance. (Without complete registration information it is impossible to determine whether the

the record before us this court has no way of knowing whether some or all of their withheld rents have been returned by the Board to those other tenants.

Although the other tenants were named as real parties in interest in the petition for a writ of administrative mandamus, there is nothing in the record to show that they were ever served with that petition, as they must be under section 1107 of the Code of Civil Procedure, or with the order directing issuance of the writ, as that order provided. Nor is there any evidence in the record that the other tenants ever made an appearance in connection with the petition.

The disposition insofar as it directs these other tenants to repay withheld rents offends fundamental notions of procedural due process. Undaunted by the fact that this court has never acquired jurisdiction over these other tenants, the majority opinion aggravates its error by directing those tenants be required to repay past withheld rent.

[7] The ordinance required an initial registration fee of $12 per unit, with provisions for increasing that fee. (§§ 13.76.080 (D), 13.76.060 (N).) For each registration fee unpaid as of the effective date of the ordinance and for every successive 60 days in which the fee goes unpaid the Board is directed by the ordinance to collect a penalty of 100 percent of the original fee. (§ 13.76.080 (E).)

landlord is charging excessive rent within the terms of the ordinance.) Thus, by foregoing the penalties against the Floystrups the city was making a major concession when it signed the stipulation.

Directing the return of the registration fees amounts to a nonsensical sanction against the Board. The Floystrups' duty to pay those fees is imposed by the ordinance (§ 13.76.080 (D)), was confirmed by the court order of June 17, 1981, and was simply reiterated as a term in the stipulation.

The majority opinion takes great offense at the Board's conduct when a year after it entered into the stipulation, on March 1, 1983, it moved to dismiss the civil action without prejudice. As an initial matter the stipulation by its very terms only barred the Board from seeking preliminary relief prior to trial on the permanent injunction. That trial did not occur because the case was dismissed by the Board.

The majority opinion evolves a new rule of stipulation construction which reads: "It is a violation of the implied covenant of good faith and fair dealing for a plaintiff not to bring his action to trial if by doing so he deprives the defendant of an opportunity to resolve on the merits a constitutional claim the defendant raises as a defense." I submit that the Board had no duty whatsoever under the stipulation to bring the matter to trial to allow the Floystrups to test whether their Fifth Amendment right against self-incrimination was impinged by the registration requirements of the ordinance.[8]

---

[8] The estoppel argument advanced by the Floystrups, as opposed to that in the majority opinion, is that the terms of the stipulation expressly precluded them from liability for "penalties" prior to trial on the permanent injunction. By equating the rent withholding orders with "administrative penalties," the Floystrups argue that the Board was estopped from issuing such withholding orders until it brought its suit for injunctive relief to trial. This reading of the stipulation assumes that the term "penalties" includes more than the sums assessed for late registration (see § 13.76.080 (E).) While this is a highly debatable reading, the estoppel argument founders even if we accept a broad reading of "penalties."

"The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423].)

Assuming for the sake of argument that the elements of an estoppel could be satisfied, the Floystrups are, in effect, arguing that the public interest benefits of rent control, which can only be enforced if landlords comply with registration, are less weighty than the injury they have suffered. What exactly is the nature of the Floystrups' injury? Because the Floystrups negotiated the stipulation at issue with the city they believed themselves to be free of an obligation to provide complete rental information at least until the trial on the permanent injunction. Once the city dismissed the suit the Floystrups contended that they were forevermore free of the legal obligation imposed by the ordinance upon all other Berkeley landlords to provide complete registration information. By this reasoning their tenants, whether or not

Nor do the circumstances surrounding the dismissal suggest that the Board acted out of animus toward the Floystrups. The majority opinion omits to mention that this dismissal was not an isolated dismissal directed solely toward the Floystrups. Over 100 cases were filed by the Board against nonregistering landlords in 1981; by 1983 those cases were in a variety of postures, and the Board decided to dismiss them all. Similarly there is no evidence that the Board sought to mislead the Floystrups as to their continuing obligation to register their rental units. Immediately before the dismissal on February 18 and again immediately after it on March 3 the Board notified the Floystrups of its position that they were required to register.

Because the stipulation is unambiguous the superior court did not err in reading it as imposing no duty upon the Board to maintain its civil suit. Nor did the superior court err in finding that the stipulation did not forevermore estop the Board from enforcing the registration requirements of the Ordinance.

### Equal Protection/Due Process

As the majority opinion notes the Floystrups have sought to raise on appeal a variety of challenges to the actions of the Board. Most of these are not properly before this court because they were not raised at the administrative hearing[9] and thus were not part of the record before the superior court. Appellate review of administrative mandamus actions is limited to issues contained in the administrative record. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019 [162 Cal.Rptr. 224].) The rationale behind this rule is to preclude a party to the administrative action from withholding a defense or making only a pro forma showing at the administrative level in order to obtain " 'an unlimited trial de novo, on expanded issues, in the reviewing court.' " (*Ibid.*)

An exception to this rule exists when the issue on appeal is a facial challenge to the constitutionality of the law under which the administrative

---

those tenants were in possession when the Board instituted its civil suit or signed the stipulation, are denied one of the remedies (petition for a rent withholding order) granted by the ordinance to all other Berkeley tenants of nonregistered landlords. (§ 13.76.150 (A)(1).) I cannot say that the public interest or policy at stake—that of requiring landlords to register their rental units by providing rental rate history—is not a substantial one. Registration is obviously central to enforcement of the ordinance. To raise an estoppel here is to prevent the city from responding to a tenant-initiated complaint and thus to preclude the Floystrups' tenants from full enjoyment of their legal remedies as set out in the ordinance.

[9] Although appellants insist that they did in fact preserve all of these issues by presenting them at the administrative level, their own citation to the record belies this contention. Thus, in a letter from their attorney to the hearing examiner they expressly cautioned him that the question before him was "a narrow one concerning the propriety of our clients' registration activity to date."

agency functions. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Taylor* v. *Swanson* (1982) 137 Cal.App.3d 416, 418 [187 Cal.Rptr. 111]; see also *Rossco Holdings Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 656-657 [260 Cal.Rptr. 736].) Besides the judicial powers issue, the only other facial constitutional challenge raised by the Floystrups is their contention that the ordinance denies landlords equal protection because it operates in conjunction with the state political reform act to bar for financial conflict of interest (Gov. Code, §§ 81000, 87103) landlord-commissioner participation in most Board decisions. The Floystrups contrast this treatment of landlord commissioners with tenant commissioners whose rent obligation may be affected by the Board's decisions, but who are not similarly precluded from participating in those decisions.

Though they frame the argument in only the most general language, presumably the Floystrups make their equal protection and due process claims under both the state and federal constitutions. (Cal. Const., art. I, § 7, subd. (a); U.S. Const., 5th and 14th Amends.) The classifications created by the ordinance must bear a rational relationship to a proper legislative goal in order not to offend the principles of equal protection. (*Pennell* v. *San Jose* (1988) 485 U.S. 1, 14 [99 L.Ed.2d 1, 16, 108 S.Ct. 849]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) Substantive due process is offended when a legislative enactment is fundamentally unfair. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 24-25 [68 L.Ed.2d 640, 648, 101 S.Ct. 2153]; *Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].)

The purposes of the ordinance as it articulates them can roughly be described as consumer protection for tenants by regulation of residential rent increases. (§ 13.76.030.) This is an appropriate legislative goal. (*Pennell* v. *San Jose, supra,* 485 U.S. at p. 13 [99 L.Ed.2d at p. 15.) While the Floystrups argue that landlords and tenants are similarly situated with respect to having a financial interest in the decisions of the Board, they overlook the relative size of that financial interest. Only those landlords who own four or more rental units are considered members of the rental industry who are subject to the conflict of interest statutes. (*Ferraro* Opinion, 4 FPPC Opinions 62, No. 78-009, Nov. 7, 1978.) The Floystrups do not suggest that there are substantial numbers of Berkeley tenants who personally pay rent on four or more apartments and thus have a financial interest somewhat comparable to that of the landlords in rent rate decisions before the Board. The distinctions drawn by the ordinance have a rational relationship to a legitimate legislative purpose and are not so unfair as to offend the state or federal constitutions. I would reject this facial challenge to the ordinance.

## Attorney Fees

In light of the foregoing it will come as little surprise that I also dissent from the majority opinion when it awards attorney fees to the Floystrups under Government Code section 800. That section permits an award of attorney fees when on appeal of an administrative proceeding it is determined that the public entity acted in an "arbitrary or capricious" manner.

The majority opinion awards fees under this section without discussion of why it does so; the Board, having had its hands slapped with a substantial monetary sanction, can only infer that it has somehow been arbitrary or capricious. The cases cited by the majority opinion offer little elucidation. *Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215 [134 Cal.Rptr. 332], stands simply for the proposition that if an aggrieved party can show entitlement to Government Code section 800 fees the award must be made. (At p. 225.) In *Campbell* v. *Residential Rent Stabilization & Arbitration* (1983) 142 Cal.App.3d 123 [190 Cal.Rptr. 829], both parties conceded that an agency determination was unsupported by substantial evidence—an inoperable doorbell led the hearing officer to reduce all rents for a multi-unit building by 2 percent. (At pp. 129-130.) Thus the case stands for the proposition that a decision made without sufficient evidentiary support can be arbitrary or capricious.

I refuse to subscribe to the notion that the Board was acting arbitrarily or capriciously in not pursuing its civil suit to trial—a duty the majority conjures from the stipulation. Nor can I say the Board was acting arbitrarily and capriciously in implementing the rent withholding provisions of the ordinance against a nonregistered landlord in response to the Fantin and Rolfe petition *as it was required to do under the ordinance.* (§ 13.76.150.) The needle on my arbitrariness and capriciousness detection device (ACDD), like the one employed by the majority, registers aplenty in this case, but its needle does not point to the Board.

I would affirm the judgment of the superior court.

A petition for a rehearing was denied May 30, 1990, and the opinion was modified to read as printed above. Poché, J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied July 18, 1990.