[Civ. No. 53868. First Dist., Div. One. July 24, 1984.]

IMPERIAL INSURANCE COMPANY, Plaintiff and Appellant, v. CALIFORNIA CASUALTY INDEMNITY EXCHANGE et al., Defendants and Respondents.

COUNSEL

Henry T. Morrow, Patricia M. Leary and Hoge, Fenton, Jones & Appel, Inc., for Plaintiff and Appellant.

John F. Van De Poel, Marc E. Abramson, Van De Poel, Strickland & Haapala, Joseph W. Rogers, Jr., Susan M. Popik, Leo F. Orenstein, Rogers, Joseph, O'Donnell & Quinn, Michael J. Brady, Mark G. Bonino, Jonathan Lee Willis and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendants and Respondents.

OPINION

**HOLMDAHL, J.**—Appellant appeals from judgment of dismissal, entered pursuant to Code of Civil Procedure section 583, subdivision (a).

The judgment is reversed.

*Facts*

Underlying Facts

On December 7, 1972, there was a motor vehicle accident injuring one person and killing another. The truck which caused the accident was owned

by Della Vogee and was driven by one Hicks, an employee of Sam Casperson, doing business as Casperson Trucking Company (hereafter, Casperson), with the permission of Della Vogee. At the time of the accident, the truck was engaged in activities for which Casperson had been hired by IHL Trucking (hereafter, IHL). Appellant Imperial Insurance Company (now succeeded by California Insurance Guarantee Association) was the insurer of Casperson. IHL was insured by defendant California Casualty Indemnity Exchange (hereafter, California Casualty). Della Vogee and the truck were insured by defendant Colonial Insurance Company (hereafter, Colonial). Della Vogee's insurance broker was Robert Lampert, who had advised Sam Casperson that Della Vogee's insurance was still in force when Casperson undertook use of the truck.

Colonial claimed that Della Vogee's policy had been cancelled prior to the accident, and a dispute arose as to whether Lampert's representation of existing coverage to Casperson was or was not binding upon Colonial. Defendant Employers Reinsurance Corporation (hereafter, Employers Reinsurance) provided errors and omissions insurance for Lampert.

Procedural Facts

Appellant filed the action below in San Francisco Superior Court on June 25, 1975. The action was for a declaration as to the rights and duties of the respective insurers, with Casperson also named as a defendant.

Previously, in May, 1973, Casperson had filed an action for declaratory relief against Colonial, Lampert, and Lampert's agent, seeking a declaration that Colonial's policy on Della Vogee covered the accident or, in the alternative, that Lampert was liable for any judgment rendered against Casperson. Colonial complained against Lampert, seeking indemnity should Colonial be held to have coverage for Della Vogee. (This litigation will be referred to as the Casperson action.)

The Casperson action was tried in 1975, and a judgment was entered that Colonial was obligated to provide coverage, but only in excess of appellant's coverage on Casperson. Colonial was held entitled to recover from Lampert payments which it had paid on behalf of Casperson. This judgment was appealed.

The death and injury actions arising out of the accident eventually were settled. Thereafter, on February 23, 1976, the parties to the present lawsuit entered into a contract reserving all rights among the insurers and brokers, indicating their expectation that this action would resolve the issues of coverage.

On June 1, 1976, during the pendency of the Casperson appeal before the Court of Appeal, all parties to the appeal stipulated that appellant might be joined as a party so that some of the questions of priority of coverage might be decided.

The trial of the present case had been scheduled to commence June 1, 1976, following appellant's motions to set and to advance and the previous filing of an at-issue memorandum by defendant Colonial on January 16, 1976. At the instance of Colonial, all parties agreed on May 24, 1976, that the case go off calendar indefinitely, subject to being reset on motion to advance by any party.

The text of the stipulation is as follows: "IT IS HEREBY STIPULATED by all the parties hereto that the trial of this case may be postponed indefinitely from its present date of June 1, 1976, and that the case may be dropped from the trial calendar subject to being reset on motion to advance by any party to the action.."

As part of the process of obtaining the signatures of the various attorneys in the action, Colonial's attorney circulated a letter dated April 23, 1976, which contained the following: "[¶] I presume we all agree, as I know some of us do, that the trial date of June 1, 1976, is too soon on this case, at least while the Court of Appeal still has before it the appeal in the associated case of *Casperson vs. Vogee, et al.* None of us knows yet whether that appeal will be dismissed for mootness or what the effect will be of proceeding with that appeal if it is not dismissed. In any event, it is clear that none of us will be ready for trial in the present case by June 1 and, therefore, I presume we are all agreeable to signing the enclosed Stipulation."

On May 24, 1976 (the same date as the stipulation), Colonial's attorney sent to the trial court, with copies to the attorneys for the other parties, a letter stating the following:

"Dear Judge Drewes:

"The above-referenced case is an action for declaratory relief amongst several insurance companies and presently has a trial date of June 1, 1976. It is set for a non-jury trial and the issues are primarily, if not entirely, legal rather than factual.

"For various reasons, counsel for all the parties feel that it would be preferable to put this case off calendar subject to being reset on a motion to advance. One reason is that there is the pending appeal in a companion action.

"In view of these circumstances, all counsel would like to have this accomplished by the Court without the necessity of a formal hearing in open Court. If this can be accomplished, all counsel would appreciate it."

Based upon the request and stipulation, the trial court dropped the case from its trial calendar.

On May 10, 1977, the Court of Appeal filed its decision in the Casperson action, and the appeal was final as of June 9, 1977.

On July 27, 1977, appellant's attorney wrote to all defense counsel proposing that an attempt be made to move the case to Santa Clara County, where there was a shorter trial calendar, and requesting a response from the parties addressed.

Beginning in 1977, the insurance commissioner commenced receivership and, later, liquidation proceedings against appellant. According to appellant, it was uncertain until January, 1978, who constituted the actual management of the company.

On January 10, 1978, the insurance commissioner made his order to liquidate appellant. During the liquidation-receivership proceedings, appellant received from Employers Reinsurance apparently the only reply to its July 27, 1977, letter with respect to transfer and settlement.

In April, 1979, continuing until the current appeal, appellant's attorney partially retired from the practice of law following a heart attack, angina, and open heart surgery.

On October 12, 1979, appellant's attorney wrote to all defense counsel setting forth its position and proposing settlement discussions. On October 26, 1979, Colonial's counsel replied, indicating he would discuss the matter with other counsel and, thereafter, "I will be in a position to respond to your observations and questions." He closed the letter by stating "I will be in touch with you in the near future." He also indicated willingness to accept appellant's suggestion that the case be transferred to Santa Clara County.

Evidently, appellant received no further response, and on March 17, 1980, its attorney sent another letter to all defense counsel. In it he proposed a settlement figure and solicited defense counsels' responses to it.

On August 11, 1980, California Casualty filed its memorandum that the civil case was at issue.

On September 8, 1980, both Colonial and California Casualty filed their motions to dismiss under Code of Civil Procedure section 583, subdivision (b) (hereafter, the 583(b) motions). Appellant thereafter filed its opposition to the motions. The motions were subsequently heard and denied on October 7, 1980.

On November 5, 1980, Employers Reinsurance filed its motion to dismiss under Code of Civil Procedure section 583, subdivision (a) (hereafter, the 583(a) motion). California Casualty and Colonial joined in the motion, on November 21 and December 5, respectively, and appellant filed its opposition.

The hearing on the motion was held on December 23, 1980, before the same judge who had denied the earlier motions. The minute order states that "Court ordered case dismissed for delay and failure to comply with Rule 203.5."

The reference to California Rules of Court, rule 203.5 in the minute order apparently relates to the fact that the rule's subdivision (b) (since repealed in 1984) states, in pertinent part, that "[w]ithin 15 days after service of the notice of motion [pursuant to Code of Civil Procedure section 583, subdivision (a)], the opposing party may serve and file his written opposition thereto." Appellant's opposition to the 583(a) motion was filed on December 11, 1980. The parties seem to take it for granted that the appellant's opposition papers were not filed within the 15-day period commencing with the November 5, 1980, filing of the 583(a) motion. However, that fact is not explicitly demonstrated by the record in this case, since there does not appear to be a copy in it of the proof of service of the motion.[1]

The judgment of dismissal was entered on January 15, 1981, and stated the appellant's complaint was dismissed "pursuant to C.C.P. § 583(a) for want of prosecution by the plaintiff." Appellant thereafter filed its notice of appeal.

### Issues

Appellant contends that "[¶] [w]here the parties have entered into an agreement permitting indefinite postponement of a trial, and this agreement has not been terminated in accordance with its terms, it is abuse of discretion to dismiss plaintiff's case."

The respondents' position as to the effect of the stipulation is best summarized as follows (from California Casualty's brief): "Appellant has not

---

[1]Our resolution of this appeal, however, does not depend upon this factor.

been diligent in the prosecution of its action for over three years. Appellant can point to nothing in the record which would excuse its delay in prosecution.

"The stipulation entered into among all parties was intended by the parties to excuse diligence only for the period of time the appeal was pending in the related action. Once that appeal became final on June 9, 1977, appellant was again charged with the duty to diligently prosecute this action. However, after June 9, 1977 appellant took no action to secure a timely trial date.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The interests of justice are best served by dismissal of this action. In this case, the policy favoring dismissals of actions which have not been diligently prosecuted substantially outweighs the policy favoring a trial on the merits.

"The Court considered and correctly applied the factors enumerated in California Rules of Court, rule 203.5(e).

"Appellant has failed to present a record which affirmatively demonstrates on its face an abuse of discretion which resulted in a miscarriage of justice."

The parties agreed that the trial could be postponed "indefinitely" and that the case could be removed from the trial calendar "subject to being reset on motion to advance by any party."

### Effect of the Stipulation

■ In construing stipulations, the rules for construction of contracts apply. (*J. C. Penney Co.* v. *Superior Court* (1959) 52 Cal.2d 666, 669 [343 P.2d 919]; *Chapin* v. *Superior Court* (1965) 234 Cal.App.2d 571, 575 [44 Cal.Rptr. 496].) "[¶] The apparent overriding guiding principle in the decision of the cases [involving stipulations excusing diligence] has been to give credence to the *intent* of the parties, and to do so in a reasonable manner." (*Farrar, Herrick & Associates* v. *Safecare Co.* (1981) 115 Cal.App.3d 123, 131 [132 Cal.Rptr. 641], original italics.)

■ Appellant interprets the agreement to mean that it remained in effect until a given act occurred: namely, a motion to advance. It relies on two cases involving plaintiffs who gave defendants extensions of time within

which to file responsive pleadings: *General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449 [124 Cal.Rptr. 745, 541 P.2d 289] and *Meraia* v. *McCann* (1978) 83 Cal.App.3d 239 [147 Cal.Rptr. 756]. In both cases, the defendants sought dismissals instead of filing responsive pleadings. On appeal it was held in each case that dismissal of the case was (or would have been) improper.

California Casualty distinguishes *General Ins. Co.* and *Meraia* from the instant case by noting that in those cases the stipulations "excused defendants from performing a legal duty owed (e.g., to timely file responsive pleadings) and effectively prevented plaintiff from taking coercive legal action to protect plaintiff's rights (e.g., obtaining defendant's default)." This argument ignores the fact that, in both cases, the plaintiffs *could* have terminated the extensions of time on notice, but even so the cases hold that a defendant may not use an open extension he sought and received for the purpose of disadvantaging the plaintiff who has acceded to his request. Moreover, even if the distinction pointed out by California Casualty were deemed to be a substantive one, another case cited by appellant is not so easily distinguished. The case is *Garza* v. *Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303 [167 Cal.Rptr. 629], in which the appellate court found that the lower court had abused its discretion in dismissing an action pursuant to Code of Civil Procedure section 583, subdivision (a).

In *Garza*, the stipulation provided that the trial date " 'be vacated, and a new trial be reset by stipulation of the parties herein.' " (110 Cal.App.3d at p. 307.) The *Garza* court stated that "[t]he import of [the extension of time and the stipulation] is to dampen any sense of urgency."[2] (*Id.*, at p. 313.)

The court went on to say: "A mere stipulation to drop the trial date would imply nothing more than the parties agree not to go to trial on that particular date. The provision that the case would be reset by stipulation of the parties is significant. It implies that the usual manner of setting whereby one party files his request for trial date will not be followed. Instead, it implies that the parties will agree and jointly act in obtaining the date for trial.

"A fair interpretation of the stipulation would dictate that before any party made motion to dismiss the case for lack of prosecution, he notify the other parties of his intention to so proceed if the case is not promptly set for trial.

---

[2] The *Garza* stipulation also extended time to answer interrogatories. But *Garza* makes clear that the stipulation dropping the trial date was the more important factor.

"The stipulation invoked or rather lulled a sense of security against dismissal. The full import of the stipulation was to excuse appellant from the burden of diligent prosecution she otherwise bore." (*Garza* v. *Delano Union Elementary School Dist.*, *supra*, 110 Cal.App.3d 303, 313.)

California Casualty attempts to distinguish *Garza* from the instant case because in *Garza* the stipulation contemplated that a new trial date would be set by stipulation. "*Garza* held the stipulation was significant because it implied the parties would agree to jointly act in obtaining the trial date. Unlike *Garza*, the parties to this appeal did not agree to set the trial date by stipulation. Rather, the parties agreed that any party could unilaterally set the trial date by a motion to advance. This fact distinguishes this case from *Garza* as the parties in this case clearly intended that joint action was not required to set the trial date."

The distinction California Casualty attempts to draw is largely an artificial one, and we are offered no explanation why the rational basis for the decision in *Garza* would not yield a similar result when applied to the instant case. The significant factor in *Garza* v. *Delano Union Elementary School Dist.*, *supra*, 110 Cal.App.3d 303, is that the stipulation that a " 'new trial be reset by stipulation of the parties' " (*id.*, at p. 307) meant that before a party moved to dismiss for lack of prosecution, he would "notify the other parties of his intention to so proceed if the case is not promptly set for trial." (*Id.*, at p. 313.) A similar, significant factor is present in the instant case, as well, in the form of the stipulation that trial "be postponed indefinitely . . . subject to being reset on motion to advance by any party."[3] As in the *Garza* case, the stipulation here was one which could have "invoked or . . . lulled a sense of security against dismissal." (*Ibid.*) We conclude that the stipulation that " 'a new trial be reset by stipulation of the parties' " meant an agreement that any party could file a motion to advance (presumably making a dismissal motion unnecessary) and that any party would, in any event, before moving to dismiss for lack of prosecution, in the words

---

[3] We note existence in the present case of these additional factors as well: One of the defendants (Colonial) initiated the effort which resulted in the stipulation; the other parties apparently agreed with its attorney's opinion the previously-set trial date was "too soon" and that "none of us will be ready for trial"; appellant or its attorney wrote to respondents three times between finality of the Casperson decision and the second dismissal motion, with only one reply to each of two of the letters; during this same period, appellant underwent receivership-liquidation proceedings and its attorney partially retired after open heart surgery; and, some seven weeks after the five-year period ran, California Casualty filed its memorandum that the case was at issue. California Casualty or any other party could have previously terminated at any time the indefinite postponement provided by the stipulation by simply filing a motion to advance.

But, even without these special characteristics, we would conclude that the *Garza* principle applies.

of *Garza,* "notify the other parties of his intention to so proceed if the case is not promptly set for trial."

On the basis of the foregoing analysis, it is unnecessary to discuss any of the other arguments made by the parties. The judgment of dismissal is reversed.

Elkington, Acting P. J., and Newsom, J., concurred.