[No. B072109. Second Dist., Div. Three. Dec. 28, 1994.]

KATHERYN KIDD, Plaintiff and Appellant, v.
STEVEN D. KOPALD et al., Defendants and Respondents.

**COUNSEL**

Gelfand & Gelfand, Gary B. Gelfand, Horvitz & Levy, Barry R. Levy and Elizabeth S. Anthony for Plaintiff and Appellant.

David C. Tardiff for Defendants and Respondents.

## Opinion

**ALDRICH, J.—**

### Introduction

Plaintiff and appellant Katheryn Kidd (Kidd) appeals from the order of dismissal of her action for legal malpractice against defendants and respondents Steven Kopald (Kopald) and the law firm Kopald & Mark (collectively Kopald) for failure to bring the case to trial within three years.

Kidd contends reversal is in order because the trial court based the dismissal on the stated grounds that Kidd failed to serve the summons and complaint within two years of filing the complaint, contrary to the facts. Also, Kidd suggests any delay in prosecuting the action was reasonable in order to learn the results of the underlying lawsuit and the alleged malpractice.

We find there was no abuse of discretion by the trial court and therefore affirm the order.

### Factual and Procedural Background

On March 14, 1989, Kidd, also known as Katheryn Rusyniak, filed a complaint alleging defendants undertook to represent Kidd with respect to a business matter involving Neal's Cookies in Hollywood, California, and negligently caused loss of insurance benefits and other damages. The summons and complaint were served by mail on the law firm and Kopald respectively on February 27, 1991, and March 6, 1991. Proof of service was filed on January 16, 1992.

Kidd's underlying action involved damages arising from Kidd's eviction from her cookie business. Kidd had entered into a franchise agreement with Cookie Cutter in July 1986. On November 25, 1986, the locks were changed on her store and Kidd was evicted for alleged failure to pay her rent and franchise obligations, including the cost of goods and materials that had been supplied her. Kidd, represented by Kopald, sued Cookie Cutter, Neal Elinoff and others. That matter was sent to arbitration and an award in favor of Kidd was entered on January 11, 1990, in the sum of $95,000 against Cookie Cutter and Elinoff jointly and severally. However, Kidd was unable to collect on the judgment ultimately entered. She therefore served the complaint against Kopald for malpractice for failure to pursue her insurance benefits for the damages resulting from the eviction. Service was made

approximately two years after the complaint was filed and approximately five years after the events giving rise to this lawsuit.

The trial court noticed its intention to dismiss the malpractice action on its own motion, with a hearing set for February 11, 1992. In opposition to dismissal, Kidd's counsel, Gary Gelfand, declared the arbitration award was uncollectible, and Elinoff had recently been incarcerated. According to Gelfand the complaint was filed on March 14, 1989, and was served "shortly thereafter." Also, Gelfand represented he had "numerous telephone conversations" with Kopald and the parties were engaged in discovery and settlement discussions. An open extension to answer had been granted to defendants subject to 30 days' written notice. The open extension was actually granted orally and confirmed in writing on February 28, 1991.[1]

In support of dismissal, Kopald declared he had only two telephone conversations with Gelfand. The first occurred immediately after service of the complaint. Gelfand informed Kopald the lawsuit was filed as a result of his failure to tender a claim to Kidd's insurance carrier. In response, Kopald faxed a copy of a cancellation notice of Kidd's insurance for nonpayment of premium, which had occurred prior to the events giving rise to the underlying action, and demanded dismissal of the action with prejudice.[2] Kopald also declared Kidd had filed an action one year prior to the instant action but dismissed it without service. Kopald had represented Kidd from about April 1987 until the summer of 1990 without knowledge of Kidd's action against him. Kidd never notified Kopald of any dissatisfaction with the services provided. He represented Kidd on a contingency basis and had yet to collect any fees.

In addition to supporting the court's motion for dismissal, Kopald responded to the complaint on February 4, 1992, by demurrer. The hearing on

---

[1]The letter from defendant Kopald to Gelfand stated: "This letter will confirm my telephone conversation of this date with Joan of your office concerning your above referenced client. I was advised that you are currently waiting for a response from your client based on the documents that I provided you on February 15, 1991. The documents verify that she had personally cancelled her insurance prior to the acts which gave rise to the action against Neal's Cookies et al. [¶] Based thereon, you have granted me an open extension to respond to the complaint subject to a thirty (30) day written notice. It is my belief that upon her inspection of the documents which clearly indicate that there is no basis for her action, she will move to dismiss this matter with prejudice so that no further time and expense will be incurred. [¶] Please advise me as soon as possible of your client's decision after her review of the documents so that this matter may be put behind us and cease to be upsetting and an inaccurate reflection of the services performed for Ms. Rusyniak. [¶] If you have any questions or require any additional information, please contact me."

[2]The notice letter from Farmers Insurance Group dated June 22, 1987, informed Kidd of the nonpayment of premium due. Kidd's handwritten comment on the notice states, "I cancelled this insurance Nov. 1, 1986."

the court's motion to dismiss was continued to March 3, 1992, and the parties were requested to submit additional declarations and points and authorities.

Kidd declared she consulted Kopald about 9 a.m. the morning she was locked out of her business on November 25, 1986, and he never mentioned possible insurance coverage. Kidd provided Kopald with a box containing all of her business papers, including her insurance policies and cancelled checks. She explained she filed a claim with her insurance carrier shortly after learning of such possible recovery from another attorney in late 1988. Farmers Insurance denied the claim as untimely. She declared Kopald "repeatedly assured" her she had an excellent case against Elinoff and Cookie Cutter and would collect on any judgment obtained. Kidd asked Attorney Gelfand to do an asset search of Elinoff, paying $900 for the services of a private investigator in Texas. The report was received in December 1990 and thereafter Kopald was served. When Kopald called Gelfand about the complaint, Kopald claimed Kidd had no insurance coverage at the time of the damages caused by Cookie Cutter and Elinoff. Kidd claimed she was acting reasonably in light of her reliance on Kopald's claim her case had merit and was viable without resort to insurance coverage. She characterized her situation as a "classic dilemma." Her attorney, Gelfand, contended any delay in serving the complaint was due to their desire to mitigate damages in the hope it would not be necessary to prosecute this case.

In response to Kidd's opposition, Kopald declared he never represented to Kidd that the judgment was collectible but instead had expressed his concern that it may not be, due to the financial condition of the defendants. He stated, if he had ever been informed Kidd had filed a malpractice action against him, he would have requested immediately to be excused as the attorney of record in the underlying action. Kopald submitted copies of the retrospective notice of cancellation of insurance effective November 1, 1986, from the insurer, dated March 21, 1988.[3]

After the hearing of March 3, 1992, the trial court denied its motion to dismiss and set the matter for a status conference on June 23, 1992. At the status conference the trial court determined the matter was not yet at issue

---

[3]The declaration page shows a coverage period of July 29, 1986, to July 29, 1987. The first notice of cancellation dated May 11, 1987, shows an expiration date of June 9, 1987, and the "revised" notice shows the expiration date of November 1, 1986, apparently pursuant to Kidd's response to insurer's letter of nonpayment of premium.

and then reset a hearing to dismiss pursuant to Code of Civil Procedure section 583.420, subdivision (a)(2)(B)[4] for July 30.

Kidd's attorney, Gelfand, asserted the case had been vigorously prosecuted: form interrogatories were sent to Kopald and were answered;[5] Farmers Insurance Group produced records of Kidd's coverage pursuant to a subpoena; Kopald was requested to file his answer or a default would be taken; the deposition of Kopald had been set and continued a couple of times,[6] and Kopald had failed to produce Kidd's file pursuant to Kidd's request.

Having withdrawn his first demurrer, Kopald filed a second demurrer on July 13, 1992. In his declaration in support of the court's motion to dismiss, Kopald asserted he had spoken with Gelfand only once, in February 1991, after he was served, and that Gelfand had set his deposition on four separate occasions and each time Gelfand's office continued it.

The matter was heard and the court ordered the case dismissed "for failure to bring case to trial within 3 years." In explaining the order, the trial court stated Kidd appeared to have done little to determine the merits of her insurance claim. The court pointed out, "Delay in service of process constitutes a 'particularly pernicious form of delay in terms of potential prejudice.' [Citation.] Here there was a 2 year delay in service, and a delay of a year and 1/2 thereafter during which some actions were taken, but no effort made to get the case to trial." The need to ascertain damages did not constitute "good cause" for delay in service. "There is no excuse for not informing a lawyer that he is being sued by his client and that his client expects the lawyer to continue to give his all for the client. Defendant was kept in the dark, and continued to represent the client for two years while the suit continued to pend. The defendant worked at risk for a client without knowing it."

Kidd appeals from the order of dismissal.

For the reasons given below we find the trial court did not abuse its discretion in ordering dismissal of the action.

DISCUSSION

1.  *The Standard of Review Is Abuse of Discretion.*

■ " 'It has been aptly remarked that [Code of Civil Procedure] section 583.420 and the other dismissal-for-delay statutes serve a dual purpose:

---

[4]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[5]The record reflects that 33 form interrogatories were served on March 9, 1992.

[6]The deposition was actually continued three times, i.e. April 1, 1992, May 6, 1992, and June 16, 1992.

"[O]ne is effectually the same as that of statutes of limitations—they are both statutes of repose, seeking to discourage stale claims 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice. [Citations.]" [Citations.] Balanced against these considerations is, of course, the strong public policy which seeks to dispose of litigation on the merits rather than on procedural grounds. [Citations.] Although that policy is generally viewed as more compelling than the one seeking to promote prompt prosecution [citations], it will not prevail unless the plaintiff meets [her] burden of establishing excusable delay. [Citation.]' [Citation.]

" 'When the trial court has ruled on such a motion, " 'unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " [Citations.] " 'The burden is on the party complaining to establish an abuse of discretion . . . .' " [Citation.]' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [].)" (*Roach v. Lewis* (1993) 14 Cal.App.4th 1179, 1182-1183 [18 Cal.Rptr.2d 281].)

## 2. *The Trial Court Did Not Abuse Its Discretion in Ordering Dismissal.*

Contrary to Kidd's suggestion, the trial court did not base its dismissal solely on the delay in service, but upon that fact along with her subsequent failure to prosecute diligently.

Section 583.410, subdivision (a), provides, "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case." Rule 373 of the California Rules of Court sets forth criteria to be considered in the exercise of the court's discretion. (§ 583.410, subd. (b).)

Kidd contends the trial court's own admission that the summons and complaint were served within two years of the commencement of the action requires reversal of the dismissal, which was based upon the "narrow point" that there was a delay in service.

Kidd argues the trial court employed an improper *means* to arrive at its decision and as such cannot be affirmed even if justified by implication. (*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611-612 [236

Cal.Rptr. 605].) Kidd's contention rests upon a misreading of the trial court's explanation of its ruling. The trial court reasoned Kidd's explanation for the delay in service "lack[ed] credibility and substance," and was inexcusable. Importantly, the trial court also pointed out Kidd did little to determine the merits of her insurance claim and in addition to the delay in service there was further delay thereafter when there was no effort made to get the case to trial. The case was expressly dismissed "for failure to bring the case to trial within 3 years."

Kidd claimed uncertainty regarding the statute of limitations and points out that pursuant to the California Supreme Court's ruling in *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], she determined the action accrued upon the incidence of actual harm, the denial of her insurance claim. Kidd's apparent confusion or uncertainty about the accrual of her malpractice action, however, did not justify a delay in prosecution, once an action was commenced. As pointed out by the court in *Roach* v. *Lewis*, *supra*, 14 Cal.App.4th 1179, the dismissal-for-delay statutes serve one of the purposes of a statute of limitations—preventing surprise of claims allowed to slumber. If the time was ripe to commence the action, it was time to start the clock running as to informing the defendants of their potential liability. Contrary to Kidd's claim that the delay in service was not "surreptitious" but was necessary, the delay was inappropriate. Any "dilemma" Kidd faced was that of the statute of limitations, not the prosecution of her case once it was commenced.[7]

Kidd's contention that delay should be excused when there is an open extension to respond is meritless. ". . . [A]n open extension of time to plead does not, as a matter of law, relieve any party of its obligation to process a case with due diligence. (*Waxman* v. *Boren, Elperin, Howard & Sloan* (1990) 221 Cal.App.3d 519, 525 [].)" (*Dubois* v. *Corroon & Black Corp.* (1993) 12 Cal.App.4th 1689, 1697 [16 Cal.Rptr.2d 719].) It was always within Kidd's power to demand a response upon 30 days' notice.

Furthermore, unlike the cases cited by appellant in her letter memorandum dated September 26, 1994,[8] here plaintiff delayed for almost two years before ever granting defendant an open extension of time to respond to the complaint. The extension terminated with the filing of the first demurrer by Kidd on February 4, 1992. There was then a further delay of almost six

---

[7]Indeed, if Kidd did not suffer "actual injury" until she was unable to collect the award, as she claims, she may have been able to file a new malpractice action thereafter.

[8]After oral argument, appellant sought permission from the court to file a supplemental brief citing cases not previously cited in the briefs. The court granted permission on September 28, 1994.

months until July 30, 1992 when the court below dismissed the action. At that time the case was not at-issue and there was a demurrer to the complaint yet to be heard.

In her letter memorandum of September 26, 1994, Kidd contends that an open extension of time granted to defendants to respond excuses any delay in prosecution on the part of the plaintiff, citing *Farrar, Herrick & Associates* v. *Safecare Co.* (1981) 115 Cal.App.3d 123 [171 Cal.Rptr. 191], *Regan Distributors, Inc.* v. *Yurosek & Son, Inc.* (1979) 88 Cal.App.3d 924 [152 Cal.Rptr. 127], and *Meraia* v. *McCann* (1978) 83 Cal.App.3d 239 [147 Cal.Rptr. 756]. We disagree and find these cases distinguishable.

*Farrar* involved a dismissal under the five-year rule of section 583, subdivision (b).[9] The complaint was filed on July 3, 1973. Thereafter plaintiff granted extensions of time to respond at the request of defendant on July 30, 1973, and March 19, 1974. The latter was the equivalent of an open extension subject to "sufficient notice." (*Farrar, Herrick & Associates* v. *Safecare Co., supra*, 115 Cal.App.3d at p. 126.) On September 1, 1977, plaintiff gave notice to the defendant to respond within 20 days. No responsive pleading from defendant was filed so on February 9, 1979, plaintiff filed a request for entry of default. Without moving to set aside the default, defendant moved to dismiss the case under section 583 subdivision (b). The court dismissed the case for failure to bring the matter to trial within five years on April 30, 1979, some five years and seven months after the case was filed. The Court of Appeal found that the defendant ". . . had no standing to move for a dismissal unless and until it prevailed in a motion to set aside the default judgment previously entered in favor of [plaintiff] Farrar." (115 Cal.App.3d at p. 130.) In dicta the court stated: ". . . By their stipulation and conduct, the parties waived diligence. Once such a waiver has occurred, diligence as prescribed by the statute in question cannot be reinstated without agreement." (*Id.*, at p. 131.) This dicta was unnecessary to the disposition of the appeal as the court found the trial court lacked jurisdiction to dismiss the case without setting aside the default. (*Id.*, at p. 130.)

Since the statute in question was the five-year dismissal statute, the court appears to have decided there was a tolling of the provisions of section 583, subdivision. (b) at least between March 19, 1974, and September 1, 1977, a period of three years and six months, and therefore a dismissal under the five-year statute was premature.

---

[9]Section 583, subdivision (b), stated at that time: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended."

The court does not discuss whether a motion under section 583, subdivision (a),[10] the discretionary dismissal statute, could have been the basis for dismissal. There was more than a seven-month delay between the expiration of the first extension and the granting of the second extension and a one-year, five-month delay from September 1, 1977, the revocation of the extension and February 9, 1979, the request for entry of default. There was an additional two months before the action was dismissed.

In *Regan*, the Court of Appeal excluded two years, ten months and ten days from the time plaintiff was required to diligently prosecute its case and reversed a dismissal by the court of a case which was four years and three months old. The court stated: ". . . this approximate two-year delay in the procedural phase of this case cannot be charged against plaintiffs for the purpose of upholding the discretionary dismissal before us."[11] (*Regan Distributors, Inc.* v. *Yurosek & Son, Inc., supra,* 88 Cal.App.3d at p. 929.) After the court made this deduction there was less than a two-year delay in prosecution.

In writing for the majority, however, Justice Cobey stated: "We do not like this result. We think it violates the fundamental principle that it is a plaintiff's duty at every stage of civil litigation to expedite his case to final determination [citations], and it may discourage informal accommodation between busy counsel. But under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937], we appear to have no choice." (88 Cal.App.3d at p. 929.) Justice Allport wrote a dissent in which he criticized the holding as ". . . giv[ing] rise to not only a bad result but to do violence to fundamental legal principles." (*Ibid.*)

In *Meraia* the court again found that the provisions of section 583, subdivision (a) had been tolled for the period of the open extension and after deducting the period of tolling found there were not two years left of inactivity which would justify discretionary dismissal under that section. There, plaintiffs granted defendants open-ended extensions of time in which to file responsive pleadings subject to a 10-day written notice. The extensions were requested by the defendants and granted by the plaintiffs within three months and eleven days of the filing of the original complaint and after demurrers were sustained and the filing and service of an amended complaint. No action was taken by any party to the action until four years later,

---

[10]Section 583, subdivision (a) provided at that time: "(a) The court in its discretion may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed."

[11]The dismissal was pursuant to section 583 subdivision (a), i.e., the two-year discretionary dismissal section.

at which time plaintiffs' attorney requested answers to be filed. Defendants then filed a motion to dismiss which was granted. In reversing, the Court of Appeal stated: "We are compelled by the decision of our Supreme Court in *General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 455-456 [124 Cal.Rptr. 745, 541 P.2d 289], to conclude that the open-ended extension of time to plead was a binding agreement excusing plaintiffs from diligence. . . ." (*Meraia* v. *McCann, supra*, 83 Cal.App.3d at p. 243.) The court explained ". . . that defendants may not rely upon any lack of diligence on the part of plaintiffs prior to the termination of the open-ended extension of time to plead. No substantial time elapsed from the time such notice was given until the case was dismissed; consequently, it was an abuse of discretion to dismiss the case." (*Id.*, at p. 246.)

The Supreme Court in *Blank* v. *Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58] expressly clarified the holding in *Meraia, supra*. In *Blank*, a period of almost three years had elapsed from the filing of the original complaint to the dismissal of the action on motion of several defendants. The court found that, "[f]rom the date [the] action was filed until the date the trial court made its rulings—a period of almost three and one-half years—plaintiff did virtually nothing to prosecute [the] action. Indeed, the object of the little action he did take was to delay prosecution: plaintiff continually requested defendants to agree to continue hearings on their demurrers and finally obtained an agreement to take the demurrers off calendar indefinitely." (*Id.*, at p. 332.)

In discussing *Meraia* the court found: "Plaintiff's reliance on *Meraia* v. *McCann* (1978) 83 Cal.App.3d 239 [147 Cal.Rptr. 756], is ill-founded. Although it contains some broad language (at p. 243) that appears to support plaintiff's position that an open-ended extension of time, such as the one obtained here, excuses a plaintiff from his obligation to prosecute during its term, *Meraia* properly read holds only that when and while a defendant obtains and enjoys an open-ended extension for his benefit and at his request, he may not complain that the plaintiff has not diligently prosecuted the action. Here defendants agreed to take their demurrer off calendar indefinitely for the benefit of plaintiff and at plaintiff's request." (39 Cal.3d at p. 332)

In *General Ins. Co.* v. *Superior Court, supra*, 15 Cal.3d at page 453, the Supreme Court in a four-to-three decision mathematically subtracted the time of the open extension and found that the three-year period of section 581a, subdivisions (a) and (c) was tolled. The court found the letter confirming the open extension and agreement to accept service of the summons and complaint to be a general appearance which satisfied the provisions of

subdivision (a) and the open extension to have tolled the provisions of subdivision (c) thus making a default judgment unnecessary.[12]

In a dissenting opinion, Chief Justice Wright pointed out: ". . . It is incorrect, however, to characterize the present agreement for a terminable open extension of time to plead as one which 'precluded plaintiff from taking default judgment prior to expiration of the three-year period.' Although 'the stipulation remained in force at expiration of the period,' it did so *only* because plaintiff had unilaterally chosen not to exercise its expressly reserved right to terminate the extension on 10 days' notice. By giving such notice at any time after the agreement was made plaintiff could have eliminated all operative effects of the agreement upon either party within the specified 10 days. [Citations.] . . . [15 Cal.3d at p. 457.] [¶] In any event the express exception to section 581a, subdivision (c), relied upon by the majority, which was added in 1949 and declares that the subdivision shall operate 'except where the parties have filed a stipulation in writing that the time may be extended,'[13] does not cover stipulations which merely extend the time to *plead*. The extension contemplated by the statutory exception is of the time 'to have judgment entered,' not just to plead. [Citation.] Although a stipulation extending the time to plead bars the plaintiff from taking a default during the extension, it does not fix a certain deadline for fulfillment of the plaintiff's duty to have a default judgment entered. . . . Thus to construe an agreed extension of the defendant's time to plead as a stipulation extending the plaintiff's time to have judgment entered does not fulfill but defeats the legislative policy correctly pointed out by the majority as underlying the exception—that of avoiding unseemly disputes between counsel

[12]Former section 581a provided: "(a) . . . [A]ll actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, unless the summons on the complaint is served and return made within three years after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a *general appearance* in the action. [¶] . . . [¶] (c) All actions, heretofore or hereafter commenced, shall be dismissed by the court in which the same may be pending, on its own motion, or on the motion of any party interested therein, if no answer has been filed after either service has been made or the defendant has made a *general appearance*, if plaintiff fails, or has failed to have judgment entered within three years after service has been made or such appearance by the defendant, except where the parties have filed a stipulation in writing that the time may be extended. [¶] (d) The time during which the defendant was not amenable to the process of the court shall not be included in computing the time period specified in this section. [¶] (e) A motion to dismiss pursuant to the provisions of this section shall not, nor shall any extension of time to plead after such motion, or stipulation extending time for service of summons and return thereof, constitute a general appearance." (Original italics.) (*General Ins.* v. *Superior Court, supra,* 15 Cal.3d at pp. 452-453.)

[13]"See Statutes 1949, chapter 463, section 1, page 810, adding this form of proviso to what are now subdivisions (a) and (c) of section 581a."

over purported waivers of the right to dismissal. [Citations.]" (15 Cal.3d at p. 458, original italics.)

Justices Sullivan and Richardson concurred in the dissent.

The court in *Wheeler* v. *Payless Super Drug Stores, Inc.* (1987) 193 Cal.App.3d 1292 [238 Cal.Rptr. 885], reversed a dismissal under the five-year statute, again deducting the period of the open extension from the time the action was pending and reversing a dismissal under section 583.310.[14]

In reversing the judgment from the order of dismissal the Court of Appeal refused to consider whether the inaction on the part of the plaintiff amounted to a lack of diligent prosecution because: ". . . Defendant's notice of motion to dismiss for lack of prosecution, memorandum of points and authorities and declaration of Ronald Toff make no mention whatsoever of alleged lack of diligence on the part of plaintiff. Nor does the order of dismissal of judgment refer to or make any finding of or even mention lack of diligence on the part of plaintiff. Upon appeal, defendant must confine his arguments in support of the judgment below to facts within and supported by the record below." (193 Cal.App.3d at p. 1301.) Following *General Insurance, supra,* the court in *Wheeler,* found that the letter confirming an open extension ". . . clearly outlines an agreement to an open-ended extension of time within which defendant could file an answer to plaintiff's complaint. . . . The agreement must be enforced to effectuate the whole of the instrument." (*Id.,* at p. 1303.)

It appears that once again the court was using a tolling rationale to reach the result. Since the open extension was still in effect when the court dismissed the case, the court reasoned the five-year period of section 583.310 could not have expired.

Finally, appellant cites *Imperial Ins. Co.* v. *California Casualty Indem. Exchange* (1984) 158 Cal.App.3d 540 [204 Cal.Rptr. 819], in which the Court of Appeal reversed a dismissal under section 583 subdivision (a) for failing to diligently prosecute. The court found that at the time defendant moved for dismissal, there was in effect a binding stipulation to extend the trial indefinitely and until that stipulation was revoked the defendant could not take advantage of the plaintiff by making the motion to dismiss. The Court of Appeal stated: " 'A fair interpretation of the stipulation would dictate that before any party made [a] motion to dismiss the case for lack of prosecution, he notify the other parties of his intention to so proceed if the

---

[14]Section 583.310 states: "An action shall be brought to trial within five years after the action is commenced against the defendant."

case is not promptly set for trial. . . .' " (158 Cal.App.3d at p. 547.) Citing *General Insurance* and *Meraia, supra,* the court stated that in both cases, the defendants sought dismissals instead of filing responsive pleadings.

The instant case is quite different. Here, the extension was revoked by the filing of the demurrer; the extension was not requested or granted until almost two years after the complaint was filed. The clear intent of the extension here was to give the plaintiff the opportunity to evaluate her case and communicate her decision to defendant. It cannot be said that the defendant was trying to take advantage of plaintiff by moving to dismiss while any stipulation was in effect. Nor can it be said that the plaintiff was " 'lulled [into] a sense of security against dismissal.' " (*Imperial Ins. Co.* v. *California Casualty Indem. Exchange, supra,* 158 Cal.App.3d at p. 548.)

Furthermore, the open extension given to respondent Kopald was not solely for his benefit. It appears from Kopald's letter of February 28, 1991, that it was appellant's attorney who wanted more time so he could obtain, ". . . a response from [his] client based on the documents that [Kopald] provided . . . on February 15, 1991 . . ." The letter also asks appellant's counsel to advise Kopald, ". . . as soon as possible of [his] client's decision after her review of the documents so that this matter may be put behind us and cease to be upsetting and an inaccurate reflection of the services performed for Ms. Rusyniak." While the letter speaks in terms of an "open extension," a reading of it in the context of the circumstances of this case clearly indicates an intent to require further action by the appellant to bring the matter to an early conclusion. This is further evidence that Kopald never intended to relieve Kidd of all obligations to bring the matter to trial with diligence. (*Waxman* v. *Boren, Elperin, Howard & Sloan, supra,* 221 Cal.App.3d at pp. 525, 526.)

In *Marra* v. *Mission Foods Corp.* (1993) 19 Cal.App.4th 724, 728 [23 Cal.Rptr.2d 741], the Court of Appeal following *Blank,* and distinguishing *Meraia* and *Wheeler, supra,* stated: "Where, however, the open extension of time to plead is in reality for the benefit of the plaintiff, the defendant is not necessarily precluded from seeking dismissal of the action for failure to prosecute. [Citation.]"

■ Kidd also contends the trial court failed to consider all the matters relevant to a proper determination of the motion for dismissal set forth in California Rules of Court, rule 373(e).[15] This contention is meritless. The record on the matters specified by the rule supports the trial court's determination. Efforts at determining insurance coverage and potential liability,

---

[15]Rule 373(e) specifies the following matters: ". . . the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where

conferring with defendants to arrive at a settlement, and taking action to place the case at issue were minimal.

"Although the court did not render express findings on the factors delineated in the rule, and although it may be desirable that a court do so, there is no such mandate in the law. 'The mere fact that the court did not explicitly refer to rule [373(e)], when the statute contains no such requirement does not support the conclusion that it was ignored.' (*Wilson* v. *Sunshine Meat & Liquor Co.* [1983] 34 Cal.3d [554,] 563 [194 Cal.Rptr. 773, 669 P.2d 9].) ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . ." [Citations.]' (*Denham* v. *Superior Court* [1970] 2 Cal.3d [557,] 564 [86 Cal.Rptr. 65, 468 P.2d 193], original italics.)" (*Dubois* v. *Corroon & Black Corp., supra,* 12 Cal.App.4th at pp. 1698-1699, fn. omitted.)

### 3. *Grounds for Trial Court's Dismissal Order.*

The trial court's order of August 28, 1992, ordered the case dismissed, ". . . pursuant to Code of Civil Procedure section 583.410 et seq. *for failure to bring the case to trial within 3 years.*" (Italics added.) If one were to apply the mathematical computation found in the cases cited by appellant, this case was pending for two years and five months, i.e., less than the three years specified by the court in its order. The fact that the court may have stated incorrect grounds for the dismissal is not fatal to the court's ruling. (*Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 81 [154 Cal.Rptr. 43], overruled on other grounds in *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521 [28 Cal.Rptr.2d 475, 869 P.2d 454].) The critical question here is whether the court abused its discretion and whether there are proper "delay in prosecution" grounds justifying the court's dismissal in this case. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 331.) Section 583.410 allows the court to dismiss a case for delay in prosecution pursuant to rules adopted by the Judicial Council. (§ 583.410, subds. (a), (b).) California Rules of Court, rule 372 allows the

---

applicable, the availability of the moving party and other essential parties for service of process; the diligence in seeking to effect service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case; and any other fact or circumstance relevant to a fair determination of the issue. . . ."

court on its own motion to dismiss a case for delay in prosecution if the action has not been brought to trial within two years after the action was commenced.

The trial court, therefore had ample authority to exercise its discretion and dismiss this case under section 583.410, the code section cited in its minute order. The fact that the court added to its order that the case was being dismissed, ". . . for failure to bring the case to trial within 3 years . . ." is of no consequence. (*Geoghegan* v. *Retirement Board* (1990) 222 Cal.App.3d 1525, 1530 [272 Cal.Rptr. 419].)

Kidd failed to establish an abuse of discretion justifying reversal.

4.  *Changed Circumstances Suggest a Reexamination of Prior Case Law.*

Although not essential to the disposition of this appeal, the changed circumstances since *General Ins. Co.* v. *Superior Court, supra,* 15 Cal.3d 449; *Meraia* v. *McCann, supra,* 83 Cal.App.3d 239; *Regan Distributors, Inc.* v. *Yurosek & Son, Inc., supra,* 88 Cal.App.3d 924; *Farrar, Herrick & Associates* v. *Safecare Co., supra,* 115 Cal.App.3d 123; *Imperial Ins. Co.* v. *California Casualty Indem. Exchange, supra,* 158 Cal.App.3d 540; and *Wheeler* v. *Payless Super Drug Stores, Inc., supra,* 193 Cal.App.3d 1292, require our comment.

In *General Ins. Co.* v. *Superior Court, supra,* 15 Cal.3d at pages 457-458, Chief Justice Wright questioned the majority's willingness to excuse plaintiff's lack of diligence in the prosecution of the action. He pointed out that the delay was solely in the control of plaintiff who could have ended it at any time. Justices Sullivan and Richardson concurred in the dissent.

Justice Cobey, writing for the majority in *Regan Distributors, Inc.* v. *Yurosek & Son, Inc., supra,* 88 Cal.App.3d at page 929, also expressed dissatisfaction with the result of excusing plaintiff from his own lack of diligence. Justice Allport dissented in *Farrar, Herrick & Associates* v. *Safecare Co., supra,* 115 Cal.App.3d at page 133, stating: "Furthermore, I do not agree that the parties can excuse themselves from diligent prosecution of the action by agreement once they have elected to resort to the use of the judicial process to resolve their difficulties."

Justice Allport's comments have become more relevant since the California Legislature enacted the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.)

Prior to 1986, the management of civil cases was left to attorneys. It was not unusual under such a system of case management for a case to take five years to come to trial. In 1986 the Legislature of California stated its intent regarding the diligent prosecution of civil cases by enacting Government Code former section 68601 and transferring responsibility for case management to the courts.[16] That section stated:

"[68601.] The Legislature hereby finds and declares that:

"(a) The expeditious and timely resolution of civil and criminal actions is an integral and necessary function of the judicial branch of state government under Article VI of the California Constitution.

"(b) Delay in the resolution of both civil and criminal litigation is not in the best interests of the state and the public. The people of the State of California expect and deserve prompt justice and the speedy resolution of disputes. Delay in the resolution of litigation may reflect a failure of justice and subjects the judiciary to a loss of confidence by the public in both its fairness and utility as a public institution. Delay reduces the chance that justice will in fact be done, and often imposes severe emotional and financial hardship on litigants.

"(c) Cases filed in California's trial courts should be resolved as expeditiously as possible, consistent with the obligation of the courts to give full and careful consideration to the issues presented, and consistent with the right of parties to adequately prepare and present their cases to the courts.

"(d) Various methods for reducing delay in the litigation of cases in trial courts have been identified and tested, and have been effective in reducing the time necessary for the resolution of both civil and criminal litigation. It is in the public interest for certain trial courts to utilize these methods on a pilot program basis, in order to demonstrate their effectiveness in California."

Furthermore, the Judicial Council of California established disposition time standards for all California superior, municipal and justice courts. These standards established the following goals for general civil cases:[17] 90 percent disposed of within 12 months after filing; 98 percent disposed of within 18 months after filing and 100 percent disposed of within 24 months after filing. (Cal. Standards Jud. Admin., §§ 2.1, 2.3.)

---

[16]This section was repealed in 1990, when the pilot program for Trial Court Delay Reduction was completed and delay reduction was mandated in all courts in California.

[17]Exempted from these goals are small claims and unlawful detainer cases.

It is obvious that the clear intent of the Legislature was to establish a case management system which would assure that civil cases would be disposed of expeditiously. A rule which would allow the parties to stipulate to an open extension of time for any response or action in a civil case would defeat the purpose and would be contrary to the goals and intent of delay reduction and be counterproductive to the best interests of the state and the public. (Gov. Code, § 68601.)

In light of this clearly enunciated intent of the Legislature in enacting delay reduction, it would seem appropriate for the Supreme Court to revisit the issue of whether a stipulation entered into by the parties granting open extensions of time should excuse either party from the obligation to diligently prosecute and dispose of a civil case in this state.

## DISPOSITION

Order affirmed. Respondents awarded costs on appeal.

Croskey, Acting P. J., and Kitching. J., concurred.

A petition for a rehearing was denied January 26, 1995, and appellant's petition for review by the Supreme Court was denied March 23, 1995.