Filed 2/1/23  Udoff v. Proto Homes CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHAWNA ALLWEIN UDOFF, | B309883 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV08670) |
| v. | |
| PROTO HOMES, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Maureen Duffy-Lewis, Judge.  Affirmed.

Clark Hill, Rafael G. Nendel-Flores, Yesi Lagunas and Monique A. Eginli for Defendants and Appellants.

Custis Law, Keith A. Custis; Zarmi Law and David Zarmi for Plaintiff and Respondent.

_____

Plaintiff-Respondent Shawna Allwein Udoff sued Defendants-Appellants Proto Homes, Factors, LLC, Group F. Builders, LLC, and Farhad Vafaee's on claims related to her employment with Proto Homes. Appellants appeal the trial court's order denying their motion to compel arbitration of Udoff's claims. We affirm the trial court's findings that the provisions of Udoff's employment agreement with Proto Homes invalidate the arbitration agreement provided by Proto Homes' payroll company Avitus, Inc.

## BACKGROUND

1. **Proto Homes Hires Udoff and Has Her Sign the Proto Homes Employment Agreement**

Defendants-Appellants Proto Homes, Factors, LLC, and Group F. Builders, LLC, are related construction companies controlled by individual defendant-appellant Farhad Vafaee. Vafaee is the Executive Chairman/Chief Executive Officer (CEO) and Chief Operating Officer (COO) of Proto Homes and the founder and CEO of both Factors and Group F.

Proto Homes hired Udoff on July 9, 2018 as a sales and client manager. On July 26, 2018, Udoff signed an employment agreement (Proto Homes Agreement) and a commission agreement. Vafaee signed both agreements. The Proto Homes Agreement provided that it would "begin on the Effective Date of this Agreement and end on December 31, 2018."

The Proto Homes Agreement contained several relevant provisions, including one that laid out dispute resolution procedures between Proto Homes and Udoff. Under Section 28, the Parties agreed that:

"a. Any dispute that arises out of or relates to Employee's employment relationship with Employer, the termination of that

2

employment relationship, or the validity, enforceability, or breach of this Agreement (including this Section) shall be submitted to mediation upon terms set forth in this Section.

"b. Employee and Employer agree mediation must be completed prior to resorting to court action or other litigation. The time the matter is in mediation shall not affect the running of any applicable statute of limitations and no tolling of such statute of limitations shall occur or be inferred from the mediation requirement described in this Section in the absence of a written agreement to that effect executed by the parties.

"c. If, for any dispute subject to the terms of this Section, any party (1) commences litigation without first attempting to resolve the matter, in good faith, through mediation, or (2), before commencement of litigation, refuses to mediate in good faith after a request has been made, then that party is precluded from recovering attorney fees in that action, even if such fees would otherwise be available to that party whether provided by law or contract."

The above provision regarding dispute resolution makes no mention of arbitration.

The Proto Homes Agreement also contained an integration provision under Section 29:

"a. This Agreement contains the entire agreement between the parties and supersedes all prior or contemporaneous oral and written agreements, understandings, commitments, and practices between them, including all prior employment agreements, whether or not fully performed by Employee before the date of this Agreement.

"c. *No amendments to this Agreement may be made except by a writing signed by the Chief Operating Officer and Employee.*

*Any representations contrary to this Agreement, express or implied, written or oral, made after the date of this Agreement are hereby disclaimed.*"

The Proto Homes Agreement further contained an assignment clause under Section 24:

"a. [. . .] Employer may, at its sole option, (a) assign this Agreement and all rights and obligations under it to any business entity that succeeds to all or substantially all of the Employer's business through the merger or sale of assets [. . .]

"b. Employer further retains the sole right and discretion to assign its performance obligations for payroll, vacation policies, or benefits plans to one or more independent third-party organizations, *and in that event, such assignment or assignments shall not adversely affect or modify Employee's rights or expectations under this Agreement.*"

Finally, Section 3 of the Proto Homes Agreement provided that "when the terms of this Agreement differ from or conflict with Employer's general employment policies or practices, this Agreement shall control."

## 2. The Avitus Arbitration Agreement

Sometime in August 2018, Proto Homes entered into an agreement with Avitus, Inc. (Avitus) to provide various human resources functions for Proto Homes, including payroll services. While the Proto Homes Agreement was still in place prior to its expiration on December 31, 2018, Proto Homes provided Udoff with documents to electronically sign to begin payroll with Avitus. Prior to Proto Homes changing its policy to have Avitus conduct payroll and direct deposit, Udoff received her direct deposit from Proto Homes for three pay periods.

Udoff recalled signing an Avitus direct deposit form and W-4 but had no recollection of signing any other documents. However, as the trial court found, a document titled California Binding Arbitration Agreement (Avitus Arbitration Agreement) bears Udoff's electronic signature with a date of August 7, 2018. No other signature, either from an Avitus or Proto Homes representative, appears on the document. The Avitus Arbitration Agreement provides that Avitus, Proto Homes, and Udoff will "utilize binding arbitration to resolve all disputes that may arise out of the employment context."

**3. Trial Court Denies Proto Homes' Motion to Compel Arbitration**

On September 24, 2019, Proto Homes terminated Udoff's employment "for Cause as defined in the [Proto Homes] Employment Agreement (Section 20) executed July 26, 2018."

On March 3, 2020, Udoff filed her original complaint in Los Angeles Superior Court against Appellants. On June 18, 2020, Udoff filed the operative First Amended Complaint (FAC) asserting causes of action against all appellants for (1) failure to reimburse business expenses; (2) failure to pay minimum wage; (3) failure to pay overtime; (4) failure to provide meal periods; (5) failure to provide rest periods; (6) failure to provide accurate wage statements; and (7) failure to timely pay wages at separation. The FAC asserted causes of action against Proto Homes, LLC, Factors, LLC, and Group F. Builders, LLC for (8) failure to pay commission wages; (9) failure to pay regular wages; (10) breach of implied covenant of good faith and fair dealing; (11) retaliation under Labor Code section 1102.5; (12) retaliation under Labor Code section 98.6; (13) wrongful termination; and (14) violation of the Unfair Competition Law.

5

The FAC also asserted (15) breach of written contract against Proto and (16) breach of oral contract against Factors, Group F, and Farhad Vafaee.

On June 26, 2020, Appellants filed a motion to compel arbitration based on the Avitus Arbitration Agreement. On October 23, 2020, the trial court held a hearing on the motion.

The trial court found that Udoff had already signed the Proto Homes Agreement which provided the following: (1) the Proto Homes Agreement had a mediation clause under Section 28, but no arbitration clause; (2) the Proto Homes Agreement had an integration clause precluding amendments not signed by the Proto Homes COO 3) the Avitus Arbitration agreement was not signed by Proto Homes; and 4) the Proto Homes Agreement restricted Proto's right to assign certain of its performance obligations to a third party such that the assignment could "not adversely affect or modify the employee's rights or expectations under this [Proto Homes] Agreement." The court found that Proto Homes had the right to assign direct deposits to Avitus but could not do so if that assignment "adversely affected and modified the plaintiff's rights and expectation." The trial court concluded that "while the employer had the right to assign direct deposits to Avitus, this adversely affected and modified the Plaintiff's rights and expectation." The court therefore found that the Avitus Arbitration Agreement was not valid and denied Appellants' motion to compel arbitration. Per the Proto Homes Agreement, the trial court suggested that the Parties engage in mediation. Appellants timely appealed.

# DISCUSSION

## I.     Standard of Review

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) But if the court's denial is based "solely on a decision of law, then a de novo standard of review is employed." (*Ibid.*) "Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

"The precise meaning of any contract . . . depends upon the parties' expressed intent, using an objective standard. When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible . . . We review the agreement and the extrinsic evidence de novo, even if the evidence is susceptible to multiple interpretations, unless the interpretation depends upon credibility. If it does, we must accept any reasonable interpretation adopted by the trial court." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 21–22, 31, fns. omitted.) "[W]here . . . the extrinsic evidence is not in conflict, construction of the agreement is a question of law for our independent review." (*Appleton v. Waessil* (1994) 27 Cal.App.4th 551, 556; *Schaefer's Ambulance Service v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 586 ["[T]o the extent the evidence is not in conflict, we construe

7

the instrument, and we resolve any conflicting inferences, ourselves."].)

Here, the trial court's ultimate ruling did not require it to resolve any factual disputes.[1] The trial court based its decision on the wording of the Avitus Arbitration Agreement and the Proto Homes Agreement. We independently review the ruling. (*Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 585 (*Alvarez*).)

## II. The Trial Court Correctly Found That the Avitus Arbitration Agreement Was Invalid Based On the Existing Proto Homes Employment Agreement

"In ruling on a motion to compel arbitration, a trial court must make two determinations. First the trial court must determine whether there is a valid agreement to arbitrate. If so, the trial court must grant the order unless, as relevant here, a ground for revocation of the agreement exists." ( *Alvarez, supra,* 60 Cal.App.5th at p. 580.)

While California law establishes "a presumption in favor of arbitrability," an agreement to submit disputes to arbitration "is valid, enforceable and irrevocable . . . except [when] such grounds [] exist for the revocation of any contract." (Code Civ. Proc., § 1281; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "Put differently, an arbitration agreement will be enforced unless grounds for its revocation exist." (*Alvarez, supra*, 60 Cal.App.5th at p. 581.)

---

[1] Given that we affirm the trial court's ruling, we need not reach the issue of whether the trial court erred in rejecting Udoff's argument that Appellants did not meet their burden in showing that Udoff knowingly signed the Avitus Arbitration Agreement.

### a. Any Amendments to Section 28 Required Proto Homes COO's Signature

Contrary to Appellants' claims that the trial court found a valid arbitration agreement, and as discussed further below, the trial court correctly determined that the Avitus Arbitration Agreement was invalid based on the existing Proto Homes Agreement.

"In considering the language of the . . . agreement's arbitration provision, we apply the ordinary rules of contract interpretation." (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321.) " ' " 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.' " ' " (*Ibid.*, citing Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Civ. Code, § 1639.) " ' "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." ' " (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378 (*Ameron Internat. Corp.*), quoting *Waller v. Truck Inc. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Ambiguous language is construed against the drafter. (*First Options of Chicago, Inc. v. Kaplan* (1955) 514 U.S. 938, 944, citing Civ. Code, § 1654.)

We must first determine as a matter of law whether the Proto Homes Agreement is an integrated contract, meaning the

parties intended it "as a final expression of their agreement with respect to the terms included therein" and as "a complete and exclusive statement of the terms of the agreement." (Code Civ. Proc., § 1856, subd. (d).) "When the parties to an agreement express their intention that it is the final and complete expression of their agreement, an integration occurs. Such a contract may not be contradicted by evidence of other agreements." (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1051.)

As evidence that the Proto Homes Agreement was a complete statement of Udoff and Proto Homes' dispute resolution agreement, Section 29(a) states that "[t]his Agreement contains the entire agreement between the parties . . ." (*See Spitser v. Kentwood Home Guardians* (1972) 24 Cal.App.3d 215, 220 ["[W]hen the language is clear and explicit, does not involve an absurdity (Civ. Code, § 1638) and no ambiguity is shown, evidence of conduct is irrelevant. In other words, evidence to clarify an ambiguity is not needed when no ambiguity is shown to exist."].)

Section 29(c) then clearly states that "[n]o amendments to this Agreement may be made except by writing signed by Operation Officer and Employee." Further, "any representations contrary to this Agreement", including "*written or oral*, made after the date of this Agreement are hereby disclaimed." (Italics added.) Finally, the Proto Homes Agreement further provided that, "when the terms of this Agreement differ from or conflict with Employer's general employment policies or practices, this Agreement shall control."

As discussed above, the Proto Homes Agreement contains a dispute resolution provision under Section 28. Section 28 states

that the Parties agree to mediate before commencing a court action, but in the event they do not mediate, then attorney fees are not recoverable. Importantly, Section 28 is the complete dispute resolution provision in the Proto Homes Agreement and makes no mention of compelled arbitration.

Appellants improperly rely on *Alvarez* to support their contention that the integration clause is of no import. In that case, plaintiff pointed to the following language in her offer letter as proof that an arbitration agreement was a modification that required the signature of Altamed's CEO: " 'By accepting this offer of employment, I acknowledge that this in no way constitutes an employment contract between Altamed Health Services Corporation and myself. Furthermore, I acknowledge that my employment with Altamed Health Services Corporation is, except where prohibited by law, at will and may be terminated at any time, with or without prior notice and with or without cause, at the option of either myself or Altamed Health Services Corporation, and that no promises or representations contrary to the foregoing are binding on Altamed Health Services Corporation unless made in writing and signed by the Chief Executive Officer.' " (*Alvarez, supra,* 60 Cal.App.5th at p. 587.) We concluded that "the phrase can only reasonably be understood as applying to respondent's at will employment status only." (*Ibid.*)

In contrast, the Proto Homes provision requiring that amendments include the signature of the Proto Homes COO references amendments made to *the entire agreement*, including Section 28. The provision also makes clear that "[a]ny representations contrary to this Agreement," including "*written*

11

*or oral*, made after the date of this Agreement are hereby disclaimed." (Italics added.)

Further, Appellants' argument that the later Avitus Arbitration Agreement must control because it was signed after the Proto Homes Agreement—despite containing an integration clause that requires future amendments to be signed by the COO—has no merit. Appellants rely on two inapposite cases where the first agreement contained an integration that only integrated prior agreements and did not contemplate future amendments. (*Williams v. Atria Las Posas, supra,* 24 Cal.App.5th at p. 1052, and *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 15–16.)

Accordingly, we take the plain meaning of the above provisions to mean that any changes to Section 28 would require an amendment signed by both Udoff and the COO of Proto Homes. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 ["Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless"].)

**b.      The Proto Homes Agreement Was Still In Effect When Udoff Signed the Avitus Arbitration Agreement**

Appellants' misleadingly attempt to paint the Proto Homes Agreement as an expired agreement. Whether the Proto Homes Agreement expired after December 31, 2018 is a question we need not resolve.[2] The relevant fact is that the Proto Homes

---

[2]      We, however, note that there is evidence to support that Appellants treated the Proto Homes Agreement as still in effect when Proto Homes terminated Udoff, given that Proto Homes terminated Udoff "for cause" under the Proto Homes Agreement.

Agreement was in place at the time Udoff executed the Avitus Arbitration Agreement.

Appellants again improperly rely on *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159 to support their contention that the Avitus Arbitration Agreement is a new agreement rather than an amendment. In *Citizens for Amending Proposition L*, we observed "there is no reasonable way to construe the belatedly adopted . . . written agreement as an amendment . . . of the original agreement, which by its terms had terminated." (*Id.* at p. 1190.) In that case, the original agreement terminated on June 24, 2014 and the purported amendment took place on July 7, 2014—a month after the original agreement's expiration. (*See ibid.*)

Here, in contrast, there is no dispute that the Proto Homes agreement was in effect until at least December 31, 2018 and that the Avitus Arbitration Agreement is dated August 7, 2018. As such, the Avitus Arbitration Agreement constituted an ineffective attempted modification to the dispute resolution provision (Section 28) of the Proto Homes Agreement. It was ineffective because the integration provision bound Proto Homes to the representation that it "disclaimed" any purported written modification that was not signed by both parties and was contrary to the Agreement.

### c. The Avitus Arbitration Agreement Would Have Modified Udoff's Rights and Expectations Under the Existing Proto Homes Agreement

As the trial court properly found, Section 24 of the Proto Homes Agreement presciently contemplated this precise scenario.

13

Section 24 clearly states that Proto Homes may "assign its performance obligations for the payroll . . . to one or more independent third-party organizations" with the proviso that "such assignment . . . shall not adversely affect or modify Employee's rights or expectations under this Agreement." One such right and expectation is Udoff's right to resolve disputes by filing a lawsuit in court.

Appellants' main contention is that the trial court "impermissibly tipped the scales against California's strong public policy favoring arbitration by finding that the assignment of responsibility for direct deposit to Avitus was *adverse* to Respondent and by extension the Arbitration Agreement was adverse." But the provision above explicitly states that assignment "shall not adversely effect *or* modify Employee's rights or expectations under this Agreement." (Italics added.) As stated above, one such modification is to Udoff's expectations that she would be able to file her claims in court by mediating first or waiving attorney's fees if she chooses not to mediate. (*See Ameron Internat. Corp.*, *supra*, 50 Cal.4th at p. 1378 [" ' "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' [is to be applied] unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " ' "].)

Moreover, "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653; *see Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 548; *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648 ["arbitration

14

is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed to so submit"].) Accordingly, and as discussed above, the trial court properly found that the Avitus Arbitration Agreement was an invalid attempt to modify Udoff's rights.

## DISPOSITION

The order denying Appellants' motion to compel arbitration is affirmed. Udoff shall recover her costs on appeal.


HARUTUNIAN, J.*

We Concur:


STRATTON, P. J.


GRIMES, J.

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15